[No. 12432-1-III.    Division Three.    January 20, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JERRY L.
REDWINE, *Appellant.*

*Paul J. Wasson,* for appellant.

*John D. Knodell, Prosecuting Attorney,* and *Jerald R. Hamley, Deputy,* for respondent.

SMALL, J.[*] — Jerry Lee Redwine appeals his convictions following a jury trial for second and fourth degree assault, contending (1) the jury instructions were unconstitutional, (2) the prosecutor committed misconduct, and (3) the State's cross examination elicited improper character evidence at trial. Mr. Redwine argues pro se additional errors including: (1) the charging documents failed to allege the essential element of intent; (2) diplomatic immunity; and (3) failure to prove jurisdiction. The State cross-appeals Mr. Redwine's sentence, which was below the standard range, contending that the court's reasons were neither supported by the record nor legally sufficient. We reverse the judgment and remand for new trial.

## FACTS OF CASE

On December 30, 1991, the State filed an information charging Mr. Redwine with one count of second degree assault and one count of fourth degree assault upon Darwin Hines, a process server who had delivered legal papers to Mr. Redwine's farmstead. Mr. Redwine represented himself for the most part, filing several motions to dismiss on jurisdictional grounds and to request more specific information on the elements of the crimes charged. Trial was held February 26 and 27, 1992.[1]

At trial, the State's case rested on the testimony of one witness: Mr. Hines. He gave the following testimony: on November 7, 1991, Mr. Redwine refused to accept service of process at his home and became verbally abusive. Mr. Hines walked past him and placed the papers on the porch railing,

---

[*] Judge Ted Walter Small, Jr., is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] Mr. Redwine at first insisted on representing himself at trial, but the court persuaded him to accept standby counsel. Mr. Redwine allowed standby counsel to examine the witnesses, but he gave the opening statement and closing argument himself.

stating to Mr. Redwine that he had just been served. As Mr. Hines returned to his vehicle, Mr. Redwine kicked him hard in the buttocks. Mr. Hines entered his vehicle and began making some notes. A few more words were exchanged, then Mr. Redwine turned and walked toward the house while Mr. Hines continued making notes.

A short while later, Mr. Hines looked up and saw Mr. Redwine leveling a double-barreled shotgun at his face from approximately 80 feet away. He was startled and unsure how to act. Finally, he started backing down the driveway slowly until he neared the street. Mr. Redwine lowered the shotgun. Mr. Hines then stopped his vehicle, took some pictures of Mr. Redwine, announced he was going to report him to the police, and left. Mr. Redwine was charged with one count of second degree assault and one count of fourth degree assault.

At trial, Mr. Redwine testified on his own behalf and called two witnesses, Barbara and Robyn Tennyhill. The Tennyhills testified that they observed most, but not all, of the incident from a mobile home located 80 to 100 feet away. Barbara Tennyhill testified she saw Mr. Redwine motioning for Mr. Hines to leave, then she saw him come out of the house carrying a gun. She said he never pointed it at Mr. Hines, and she did not see Mr. Redwine do any kicking.

Robyn Tennyhill testified she had a clear view of Mr. Hines' entire walk from the porch, past Mr. Redwine and back to his vehicle. She did not see Mr. Redwine kick Mr. Hines, nor did Mr. Redwine point a gun at Mr. Hines or raise it to his shoulder.

Mr. Redwine testified that Mr. Hines attempted service, and he refused. As Mr. Hines walked back to his vehicle, he made some remarks about Mr. Redwine's recently deceased father and his mother's state of widowhood, which offended him. He ordered Mr. Hines off the property two or three times, but Mr. Hines refused to move his vehicle.

Mr. Redwine testified he then became alarmed when Mr. Hines reached over and picked up a zippered, soft-sided case which appeared to contain a pistol. He ran straight into the house, grabbed a shotgun, and then looked through the front

door peephole to locate Mr. Hines. It appeared that he had departed, so Mr. Redwine went out on the porch. When he saw that Mr. Hines had backed down the driveway but had not left the property, he raised his shotgun over his head so Mr. Hines would be sure to see it. He insisted that he never pointed the gun at Mr. Hines, but stood ready to defend himself and the women and children on his property from a man he believed had a pistol. He stood his ground until Mr. Hines left.

The court instructed the jury that the State had the burden of proving each element of the crimes beyond a reasonable doubt. Instructions 4 and 5 explained the elements of second and fourth degree assault, but did not include as an element the absence of lawful force. Instruction 7 stated, in part:

> It is a defense to a charge of assault that the force used or offered to be used was lawful as defined in this instruction.
>
> The use of, or offer to use, force upon or toward the person of another is lawful:
>
> (1) when used by a person who reasonably believes that he is about to be injured in preventing or attempting *to prevent an offense against his person*; or,
>
> (2) when used or offered in preventing or attempting *to prevent a malicious trespass* or other malicious interference with real property lawfully in the actor's possession, and
>
> when the force used is not more than is necessary.
>
> . . . .
>
> "Trespass" as used in this instruction occurs when a person enters *or remains unlawfully* in or upon the premises of another. A person enters or *remains* unlawfully in or upon premises when he is not then licensed, invited or otherwise privileged to so enter or remain.

(Italics ours.) The instructions did not provide that the State had the burden of proving beyond a reasonable doubt the absence of lawful force.

Mr. Redwine did not except to any of the court's instructions; the State objected to instruction 7.

## ISSUES

The following issues are raised in this appeal:

1. Were the jury instructions proper?
2. If not, was the error harmless?

## DECISION
### Were the Jury Instructions Proper?

■ Constitutional error may be raised for the first time on appeal (RAP 2.5(a)); this is particularly true of error affecting fundamental aspects of due process, such as the presumption of innocence and the right to have the State prove every element of the charge beyond a reasonable doubt. *State v. Johnson*, 100 Wn.2d 607, 614, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985). A jury instruction which improperly shifts the burden of proof to the defendant violates due process and is a constitutional question which may be raised for the first time on appeal. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). Therefore, we will consider this issue on appeal.

■ The due process clause of the fourteenth amendment to the United States Constitution requires the State to prove beyond a reasonable doubt all facts necessary to constitute the crime charged. *Sandstrom v. Montana*, 442 U.S. 510, 520, 61 L. Ed. 2d 39, 48, 99 S. Ct. 2450 (1979); *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

■ Although the Washington Criminal Code is silent on whether the State must prove that a defendant did not act in self-defense, Washington courts have held that the State must disprove self-defense in order to prove that the defendant acted unlawfully. *State v. Acosta*, 101 Wn.2d 612, 616, 683 P.2d 1069 (1984).

The trial court did not expressly inform the jury whether Mr. Redwine or the State bore the burden of proving or disproving self-defense. Instruction 3 explained the State had the burden of proving each element of the crimes beyond a reasonable doubt.[2] Instructions 4 and 5 then set out the

---

[2]Instruction 3 stated in relevant part:

elements of second and fourth degree assault, respectively. Instructions 4 and 5 used the term "assault". Instruction 6 defined "assault".[3] In defining an assault, the instruction used the term "unlawful force". However, instruction 7, which defined "lawful force", stated that it was a *defense* rather than an element of the crimes which the State was required to prove beyond a reasonable doubt.

■ Jury instructions must clearly indicate that the State must prove absence of self-defense beyond a reasonable doubt. *Acosta*, at 621; *McCullum*, at 496; *State v. Roberts*, 88 Wn.2d 337, 345, 562 P.2d 1259 (1977). The instructions in this case, taken as a whole, failed to meet this standard.

The State argues that Mr. Redwine did not develop sufficient facts to justify a self-defense instruction, citing *State v. Alferez*, 37 Wn. App. 508, 681 P.2d 85, *review denied*, 102 Wn.2d 1003 (1984) and *State v. Gogolin*, 45 Wn. App. 640, 727 P.2d 683 (1986). The State argues that Mr. Redwine testified he did not feel threatened by Mr. Hines, nor did he point the gun at Mr. Hines.

■ To be entitled to an instruction on self-defense, the defendant need only prove "any evidence" of self-defense. *Gogolin*, at 643. When some evidence of self-defense is presented, the jury "should be instructed that the State bears the burden of proving the absence of self-defense beyond a reasonable doubt." *McCullum*, at 500. The jury must be informed

---

"THE BURDEN OF PROOF

"The defendant is presumed to be innocent. This presumption continues to apply unless you find, during your deliberations, that it has been overcome by the evidence beyond a reasonable doubt. The crimes charged consist of several 'elements,' or parts. The state is the plaintiff and has the burden of proving each of these elements beyond a reasonable doubt."

[3]Instruction 6 stated in relevant part:
"DEFINITIONS
"An 'assault' may occur in several different forms, including the following:
"(1) an intentional touching or striking of the person of another, regardless of whether any physical harm or injury is done; or,
"(2) an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury."

in an unambiguous way that the State must prove the absence of self-defense beyond a reasonable doubt. *Acosta*, at 621.

In this case the trial court concluded that the testimony presented by Mr. Redwine was sufficient to support a self-defense instruction, instruction 7. As to the fourth degree assault, Mr. Redwine produced evidence Mr. Hines remained on the property, refusing to leave after serving the papers. As to the second degree assault, Mr. Redwine presented evidence that he believed Mr. Hines was reaching for a pistol. We agree this evidence is sufficient to require an instruction on lawful use of force on both charges.

The question is whether the instructions, taken as a whole, adequately informed the jury that the State had the burden of disproving Mr. Redwine's self-defense claim beyond a reasonable doubt. They did not. Unlike WPIC 17.02 (Supp. 1986), the court's lawful force instruction failed to clearly provide that the State has the burden of proving beyond a reasonable doubt that the force used by Mr. Redwine was not lawful.

### Was the Error in the Court's Instruction Harmless?

■ Mr. Redwine presented sufficient evidence to present the issue of self-defense to the jury. A reasonable juror could have mistakenly imputed upon Mr. Redwine the burden of proving self-defense. Because the instructions in the present case may well have affected the final outcome of the case, the error is not harmless beyond a reasonable doubt. Reversal is therefore required. *McCullum*, at 498.

Our conclusion makes it unnecessary to reach the other assignments of error.

We reverse the judgment and remand for new trial.

SWEENEY, A.C.J., and MUNSON, J., concur.

Review denied at 124 Wn.2d 1012 (1994).