[No. 20426-6-II.    Division Two.    September 12, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAWN MICHAEL CALLAHAN, *Appellant*.

*James K. Morgan,* for appellant.

*James J. Stonier, Prosecuting Attorney,* and *Stephen P. Scott, Deputy,* for respondent.

SEINFELD, J. — This case requires us to decide whether a defendant who intentionally displayed a gun, but claimed that it fired accidentally, is entitled to a self-

defense instruction. We hold that a self-defense instruction is appropriate where there is evidence that the defendant had a reasonable fear of the victim, intentionally pointed the gun at the victim, used a reasonable amount of force, and was not the aggressor. Because the trial court refused to instruct on self-defense, we reverse.

## FACTS

On an evening in late January 1995, Shawn Michael Callahan was driving to work at the local Weyerhaeuser plant when Kenneth McKee cut in front of him. Incensed, Callahan pulled beside McKee and a hostile exchange ensued between Callahan and McKee and McKee's two passengers, Ben Manning and Prosper Brajcich. This exchange continued for several blocks until both drivers pulled into a parking lot.

Manning and Brajcich exited McKee's car. In the process, McKee had to get out and pull his seat forward so Manning could alight from the back. Seeing the three men exit McKee's car, Callahan pulled a handgun from the console of his car and also got out. Manning and Callahan approached one another. Callahan cocked the gun. Manning struck a martial arts "stance" and attempted to grab the gun. The gun discharged, striking Manning in the hand.

After the shooting, Manning retreated and Callahan returned to his car and drove off. The following day, Callahan turned himself in to the authorities. The State charged him with second degree assault.

At trial, Manning testified that Callahan pointed the gun at him during the altercation. Callahan admitted displaying the gun, stating that he did so because he feared for his own safety. But he denied intentionally pointing or firing the gun at Manning. Finding Callahan's testimony inconsistent with a self-defense plea, the trial court denied Callahan's request for a self-defense jury instruction. The court also excluded evidence of Manning's

reputation for violence in the community and testimony from Callahan's employer of Callahan's reputation for peacefulness in his workplace community. The jury found Callahan guilty as charged.

On appeal, Callahan challenges the trial court's denial of the self-defense instruction. He also contends the trial court erred by excluding testimony regarding his reputation for peacefulness and Manning's reputation for violence.

## SELF-DEFENSE INSTRUCTION

■ To prove self-defense, there must be evidence that (1) the defendant subjectively feared that he was in imminent danger of death or great bodily harm; (2) this belief was objectively reasonable, *State v. Janes,* 121 Wn.2d 220, 238, 850 P.2d 495, 22 A.L.R.5th 921 (1993); (3) the defendant exercised no greater force than was reasonably necessary, *State v. Hendrickson,* 81 Wn. App. 397, 400, 914 P.2d 1194 (1996); and (4) the defendant was not the aggressor, *State v. King,* 24 Wn. App. 495, 501, 601 P.2d 982 (1979). RCW 9A.16.020(3). Further, if there is no evidence that the defendant intentionally used force, a self-defense instruction is not appropriate. *Hendrickson,* 81 Wn. App. at 400.

### *Accident v. Self-defense*

The trial court accepted the State's argument that accidental causation and self-defense are mutually exclusive claims. Because Callahan denied intentionally aiming the gun at Manning[1] or intentionally shooting him, the trial court rejected Manning's request for a self-defense instruction. Callahan argues that that he was entitled to assert self-defense because the record contains evidence that he

---

[1]The display of a gun cannot support the inference that the defendant had the specific intent to create fear in the victim. Therefore, this evidence alone is insufficient to prove second degree assault. "A jury[, however,] may infer specific intent to create fear from the defendant's pointing a gun at the victim . . . ." *State v. Eastmond,* 129 Wn.2d 497, 500, 919 P.2d 577 (1996).

intentionally displayed the gun and pointed it at Manning, and there is further evidence that this conduct was prompted by Callahan's reasonable subjective belief that Manning posed an imminent threat to Callahan's safety.

The question of whether a defendant who intentionally uses force to defend himself, but does not intend the resulting injury to the victim, can claim self-defense is one of first impression in Washington. Washington cases appear to present two opposing positions regarding the use of self-defense instructions where the physical injury was accidental.[2] Upon closer analysis, however, we conclude that this is a "false conflict."[3]

In *People v. Robinson*, 163 Ill. App. 3d 754, 516 N.E.2d 1292, 1298 (1987), the defendant claimed that in the time period preceding the shooting, he feared for his safety and intentionally used force to defend himself against the victim; he also asserted that the gun that killed the victim discharged accidentally. The trial court found the defenses of self-defense and accident mutually exclusive and required Robinson to elect the theory he wished to pursue. The appellate court reversed, harmonizing apparently divided judicial opinions by looking to:

---

[2]Opinions containing language suggesting that self-defense and accident are inconsistent and mutually exclusive include *State v. Gogolin*, 45 Wn. App. 640, 727 P.2d 683 (1986) (defendant who claimed that victim's injuries were accidental not entitled to self-defense instruction); *State v. Alferez*, 37 Wn. App. 508, 681 P.2d 859 (1984) (self-defense instruction not appropriate, in part, because defendant claimed shooting was accidental); and *State v. Safford*, 24 Wn. App. 783, 791, 604 P.2d 980 (1979) (defendant who claimed stabbing was accidental not entitled to self-defense instruction). Cases suggesting that a defendant may assert both defenses under certain circumstances include *State v. Fondren*, 41 Wn. App. 17, 21, 701 P.2d 810 (1985) (self-defense instruction appropriate, although defendant denied intentionally pulling trigger); *State v. Adams*, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982) (self-defense instruction appropriate, although defendant denied intentionally firing gun at victim).

[3]*People v. Robinson*, 163 Ill. App. 3d 754, 762, 516 N.E.2d 1292, 1298 (1987):

Courts that refuse a self-defense instruction in such circumstances have done so at least partly on the ground that the defense of self-defense conflicts with that of accident. Yet, such cases disclose a "false conflict," in that no self-defense was actually shown on the facts, thus justifying no instruction thereon that could contradict an accident theory in the first place.

(1) whether all a defendant's acts immediately preceding the charged injury were alleged by the defendant to be accidental or nonforcible . . . or (2) whether only the result itself was allegedly accidental while the preceding acts were alleged to be intentionally forcible and self-defensive . . . . In the first situation, which completely lacks intent or force prior to the injury, a defendant will understandably be held not to have shown self-defense, and a self-defense instruction ought to be precluded regardless of whether the resulting injury is "contradictorily" termed accidental. In the second situation, which involves intentional self-defense though unintended result, the intentional acts are the basis for a self-defense theory and instruction, but only for the purpose of supporting the ultimate defense theory of accident as to the charged injury itself.

*Robinson,* 163 Ill. App. 3d at 762, 516 N.E.2d at 1298.

This reasoning is equally persuasive when applied to Washington case law. For example, in *State v. Fondren,* 41 Wn. App. 17, 701 P.2d 810 (1985), Fondren shot and killed the victim when the victim grabbed his gun. Fondren testified that he had armed himself because he feared for his own safety and the safety of others and because he believed that the presence of the gun would stop the altercation. He claimed that the gun discharged accidentally during a scuffle and that he did not intend to shoot the victim. On appeal, the State argued that the self-defense instruction was inappropriate because Fondren had denied intentionally pulling the trigger. The *Fondren* court rejected this argument, finding that Fondren's intentional use of force preceding the shooting provided sufficient grounds for a self-defense instruction. *Fondren,* 41 Wn. App. at 24; *see also State v. Redwine,* 72 Wn. App. 625, 631, 865 P.2d 552 (1994) (self-defense instruction appropriate despite defendant's testimony that he never aimed the gun at the victim).

Nor do the cases that appear to prohibit both defenses reach a contrary conclusion. For instance, in *State v. Gogolin,* 45 Wn. App. 640, 727 P.2d 683 (1986), the State charged Gogolin with the assault of his ex-wife after she

reported that he had repeatedly hit her in the head with a revolver. Gogolin testified that before the alleged assault, he and the victim argued, she "came at [him] swinging," he raised his hands and attempted to push her away, and she fell down the stairs. He could not recall ever actually touching her. Without evidence that Gogolin intentionally used force in response to his reasonable subjective fear of the victim, his self-defense theory was doomed, regardless of whether he testified that the victim's injury was accidental. *Gogolin,* 45 Wn. App. at 643-44. The denial of self-defense instructions in *State v. Alferez,* 37 Wn. App. 508, 511, 681 P.2d 859 (1984) and *State v. Safford,* 24 Wn. App. 783, 790-91, 604 P.2d 980 (1979) are based on a similar factual situation, i.e., the dispositive issue was the absence of necessary elements for self-defense, not the defendants' claims that they inflicted the injury accidentally.

Similarly, in *State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977), the dispositive issue was not inconsistent defenses. In *Aleshire,* the defendant admitted to the police that he had participated in a fracas, but at trial he denied his earlier version of the events and claimed that he had not taken part in the fight. Finding insufficient evidence to support a self-defense instruction, the *Aleshire* court concluded that "[o]ne cannot deny that he struck someone and then claim that he struck them in self-defense." *Aleshire,* 89 Wn.2d at 71. Further, the *Aleshire* court's recitation of the facts suggests that Aleshire was the initial aggressor; there is no evidence that Aleshire's use of force was in response to a reasonable subjective fear of his victim; and Aleshire specifically denied the use of any intentional force against the victim. *Aleshire,* 89 Wn.2d at 68, 71.

In sum, we conclude that defenses of accident and self-defense are not invariably inconsistent and mutually exclusive. Thus, assuming sufficient evidence to support a

self-defense claim, the law permitted Callahan to assert defenses of self-defense and accidental infliction of injury.

## Sufficiency of the Evidence

The remaining question is whether the record contains sufficient evidence to support a self-defense instruction. Specifically, is there evidence that Callahan's actions preceding the shooting were intentionally forcible and self-defensive?

A trial court determines whether there is sufficient evidence to instruct the jury on self-defense by reviewing the entire record in the light most favorable to the defendant with particular attention to those events immediately preceding and including the alleged criminal act. *State v. Allery,* 101 Wn.2d 591, 594, 682 P.2d 312 (1984); *State v. McCullum,* 98 Wn.2d 484, 488-89, 656 P.2d 1064 (1983). It should give the instruction if there is credible evidence supporting the defendant's claim. *Gogolin,* 45 Wn. App. at 643. Because the defendant is entitled to the benefit of all the evidence, *Gogolin,* 45 Wn. App. at 643, his defense may be based upon facts inconsistent with his own testimony. "The law does not require an explicit statement of intent." *Hendrickson,* 81 Wn. App. at 401.

Callahan testified that immediately after pulling into the parking lot, he saw three men get out of McKee's car. Outnumbered and fearing for his safety, he attempted to de-escalate the situation by displaying a gun. This evidence tends to show that Callahan subjectively feared that he was in imminent danger of death or great bodily harm; his belief was objectively reasonable, the force used was no greater than necessary, and he was not the first aggressor.

Although Callahan testified that he did not intentionally aim or fire the gun at Manning, Manning specifically testified that Callahan did aim the gun at his head. Manning's testimony, coupled with Callahan's admission that he displayed the weapon, supports the inference that Cal-

lahan intentionally exercised force in self-defense.[4] Thus, the trial court erred when it declined to instruct the jury on self-defense.

## THE VICTIM'S REPUTATION FOR VIOLENCE

A victim's reputation for violence is admissible when the defendant alleges self-defense and shows that knowledge of the victim's reputation for violence contributed to his apprehension. *State v. Cloud*, 7 Wn. App. 211, 217, 498 P.2d 907 (1972). This evidence is also admissible to support the inference that the victim was the aggressor. *Cloud*, 7 Wn. App. at 217-18.

Here, Callahan denied having any knowledge of Manning before the night of the shooting. Consequently, Manning's reputation for violence was not a factor affecting Callahan's perception of imminent danger and was not admissible as evidence that Callahan's apprehension was reasonable. *See State v. Negrin*, 37 Wn. App. 516, 526, 681 P.2d 1287 (1984) (victim's reputation for violence irrelevant where defendant testified that he did not know the identity of his attacker).

This evidence does, however, tend to make it more likely that Manning was the aggressor. But reputation evidence must be based upon the witness's personal knowledge of the victim's reputation in a relevant community during a relevant time period. *State v. Riggs*, 32 Wn.2d 281, 284, 201 P.2d 219 (1949). A valid community must be " 'neutral enough [and] generalized enough to be classed as a community.' " *State v. Lord*, 117 Wn.2d 829, 874, 822 P.2d 177 (1991) (quoting *Parker v. State*, 458 So. 2d 750, 753-54 (Fla. 1984)). We review a trial court's decision to exclude evidence for abuse of discretion. *State v. Land*, 121 Wn.2d 494, 500, 851 P.2d 678 (1993).

---

[4]Given Manning's testimony that Callahan intentionally aimed the gun at him, we need not reach the issue of whether Callahan's intentional display of a weapon alone was sufficient to support a self-defense instruction. *But see Redwine*, 72 Wn. App. at 631 (defendant charged with second degree assault, who acknowledged intentional display of gun but denied aiming it at victim, entitled to self-defense instruction).

Callahan sought to prove Manning's reputation with testimony from two police officers, who based their opinions on knowledge acquired from Manning's past encounters with the criminal justice system. For purposes of reputation testimony, the criminal justice system is neither neutral nor sufficiently generalized to be classified as a community. *Lord,* 117 Wn.2d at 874. Exclusion of this testimony was not an abuse of discretion.

Callahan also sought to have Joe Revis, who knew Manning two years before the shooting, testify regarding Manning's reputation for violence. The trial court found that Revis's reputation testimony was too remote. Although the record does not mandate this finding, it was within the trial court's discretion.

## CALLAHAN'S REPUTATION IN THE WORKPLACE

Callahan also assigns error to the trial court's exclusion of testimony regarding his own reputation for peacefulness in his work community. At the time of the shooting, Weyerhaeuser employed Callahan on the evening shift.

■ "Where intent . . . is an essential element of an offense and the defendant denies having the mental state necessary to form the requisite intent, character evidence may be relevant and admissible to support an inference that the defendant lacks the necessary mental state." *State v. Eakins,* 127 Wn.2d 490, 495, 902 P.2d 1236 (1995). Accordingly, evidence of a defendant's character that tends to make the existence of a material fact — in this case, specific intent — more or less likely may be admissible. *Eakins,* 127 Wn.2d at 495-96; ER 404(a)(1).

■ A witness offering reputation testimony must lay a foundation establishing that the subject's reputation is based on perceptions in the community. ER 608(a). Personal opinion is not sufficient. *Land,* 121 Wn.2d at 500; ER 608 cmt. (a). This court reviews the trial court's decision regarding the sufficiency of the foundation for abuse of discretion. *Land,* 121 Wn.2d at 500.

Until recently, Washington courts have held that reputation in the community meant the reputation in the community where one resides, as opposed to one's reputation in the workplace or church community. *State v. Swenson,* 62 Wn.2d 259, 283, 382 P.2d 614 (1963). In *Land,* however, the Supreme Court rejected this narrow reading of community as outdated and overly-restrictive. 121 Wn.2d at 498. Accordingly, it overruled *Swenson* to the extent it barred evidence of reputation within "a business or other relevant community." *Land,* 121 Wn.2d at 500-01.

Here, the trial court applied the overly-restrictive definition that the *Land* court specifically rejected, finding that Callahan's work community was "too narrowly drawn and defined to be a valid community to base a reputation." The record shows that Callahan worked the night shift, sometimes seven days a week, at a plant that employed over 1,100 people. Given Callahan's work schedule and the size of the work force at the Weyerhaeuser plant, members of Callahan's workplace community were, in many ways, better positioned to have opinions regarding Callahan's reputation than the community in which he resided. Thus, on remand, Callahan may present evidence of his reputation in his workplace community, assuming it is not objectionable for a reason not argued here.

We reverse and remand.

BRIDGEWATER, A.C.J., and MORGAN, J., concur.