IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30233-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD SOLIZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Richard Soliz appeals his Yakima County second degree manslaughter conviction. He contends insufficient evidence supports his conviction because the State failed to disprove his self-defense claim beyond a reasonable doubt. Based on the range of substantial disputed evidence, we disagree. Pro se, Mr. Soliz contends insufficient deoxyribonucleic acid (DNA) testing was accomplished and asserts prosecutorial misconduct, but he fails to sufficiently elaborate for our review. Accordingly, we affirm.

FACTS

In February 2010, Mr. Soliz and his friend, Oscar Flores Jr., went to a Yakima bar. Mr. Lemus-Vargas sat at the bar stool next to Mr. Soliz. Mr. Lemus-Vargas asked Mr.

Soliz to "watch his back" because he was going to talk to several men that were sitting at a nearby table. Report of Proceedings (RP) (Aug. 23, 2011) at 554-55. Mr. Soliz agreed, but nothing happened and the men continued drinking together. When the bar closed, Mr. Lemus-Vargas offered to drive Mr. Soliz and Mr. Flores home because Mr. Soliz did not feel able to drive due to intoxication.

Mr. Flores got into the backseat of Mr. Lemus-Vargas' car and Mr. Soliz got in the front passenger seat. Mr. Soliz noticed his interior door handle was not working. As they drove, Mr. Soliz asked Mr. Lemus-Vargas what he was talking about to the people at the bar. Mr. Lemus-Vargas became very upset, raised his voice, and told Mr. Soliz it was none of his concern. Mr. Soliz claims Mr. Lemus-Vargas refused to let him out of the car. When Mr. Lemus-Vargas stopped the car at a stop sign Mr. Flores got out of the back seat. Mr. Flores later reported he wanted to get out of the car because he had violated his probation conditions by being intoxicated and feared the police might stop the vehicle; he did not remember hearing an argument between the men in front.

According to Mr. Soliz, as he tried to get out of the driver's door, Mr. Lemus-Vargas hit and stabbed him and he somehow must have managed to get the knife away from Mr. Lemus-Vargas and stabbed him in self-defense. Mr. Lemus-Vargas was discovered by passers-by and he was transported to the hospital, where he later died. The coroner's report indicated that Mr. Lemus-Vargas had a blood alcohol level of .28 and there was evidence of cocaine and metabolized cocaine and alcohol in his system. Mr.

2

Lemus-Vargas had cuts on his ankle, lip, wrist and hairline, caused by a four inch knife. He also sustained a two-inch deep stab wound into the back of his shoulder, and four stab wounds on the right side of his back. A knife was never located. Mr. Soliz left a blood trail to Mr. Flores' house where police found him. Police found bloody items belonging to Mr. Soliz hidden under a van. The State theorized that because DNA tests did not show any blood from Mr. Soliz in the car but considerable blood from Mr. Lemus-Vargas was found there, Mr. Soliz self-inflicted his wounds after the stabbing in order to claim self-defense.

The State charged Mr. Soliz with second degree murder. Mr. Soliz claimed self-defense.

At trial, Mr. Soliz testified he believed Mr. Lemus-Vargas was going to kill him. Mr. Soliz suffered bruises on the back of his head and shoulders, a cut to his leg, an abdominal stab wound, and bruises to his face and left hand. The tendons in both hands were severed and were characterized by the forensic pathologist as "defensive wounds." RP (Aug. 25, 2011) at 760. Mr. Soliz had no immediate or later recollection of getting the knife away from Mr. Lemus-Vargas or of harming him.

Dr. Mark McClung, a psychiatrist, testified that he interviewed Mr. Soliz, reviewed discovery, conducted tests, and obtained background information from family members about Mr. Soliz. It was his opinion that Mr. Soliz perceived the attack by Mr.

3

Lemus-Vargas as life-threatening, and as a result suffered from acute stress disorder at the time and later, post-traumatic stress disorder.

A forensic examination of Mr. Lemus-Vargas' car revealed blood staining in and around the driver's seat, as well as between the seat and door. Blood was found on the steering wheel, as well as on the console. In contrast, no blood staining was found on the passenger seat or in the front of the front passenger seat area.

Analysis of the blood samples retrieved from inside the vehicle revealed that the DNA profile matched that of Mr. Lemus-Vargas. No DNA evidence collected in the car showed any blood from Mr. Soliz, although he claimed to have bled "like a stuck pig." RP (August 24, 2011) at 632.

Dr. Daniel Selove, the forensic pathologist who performed the autopsy on Mr. Lemus-Vargas testified as to his observations and findings. He testified to the multiple stab wounds on Mr. Lemus-Vargas body and that several were defensive wounds. Additionally, Dr. Selove had an opportunity to analyze photographs of Mr. Soliz's wounds and was of the opinion that those wounds would be consistent with several scenarios, including defensive wounds, but would also be consistent with a hand which had been holding the knife slipping off the handle, or self-inflicted wounds.

The jury found Mr. Soliz guilty of the lesser-included offense of second degree manslaughter with a deadly weapon. Mr. Soliz appealed.

4

ANALYSIS

A. Evidence Sufficiency

Mr. Soliz contends the State failed to satisfy its burden of disproving self defense beyond a reasonable doubt. Instead, he argues the evidence established he reasonably believed he was in imminent danger of harm and was therefore entitled to use reasonable force to defend himself. In short, Mr. Soliz essentially asks us reassess the credibility of the testimony and other evidence. The jury is charged with assessing the facts, not the court. Here, the evidence was legally sufficient to support the jury's verdict.

Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. *Id.* In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

An appellate court will overturn a jury verdict "only when it is clearly unsupported by substantial evidence." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994). Substantial evidence is "sufficient evidence to persuade a rational, fair-minded person of the truth of the premise." *Westmark Dev. Corp. v. City of Burien*, 140 Wn. App. 540, 557, 166 P.3d 813 (2007). The presence of conflicting evidence, without

more, does not undermine a jury's verdict. When reviewing the evidence, an appellate court does not "reweigh the evidence, draw its own inferences, or substitute its judgment for the jury." *Id.*

A person is guilty of second degree manslaughter when he or she causes the death of another person through his or her criminal negligence. RCW 9A.32.070(1). A person acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such a risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in that situation. RCW 9A.08.010(1)(d). Criminal negligence can also be established if the person acted recklessly. RCW 9A.08.010(2). A person acts recklessly when he or she disregards a known substantial risk that a wrongful act may occur and the disregard of such a risk is a gross deviation from the standard of care that a reasonable person would exercise in the same situation. RCW 9A.08.010(1)(c).

In defense of manslaughter, a defendant may allege self-defense. A defendant may lawfully use force in self-defense if (1) the defendant subjectively feared that he or she was in imminent danger of harm from the victim, (2) this belief was objectively reasonable, (3) the defendant exercised no greater force than was reasonably necessary, and (4) the defendant was not the aggressor. *State v. Callahan*, 87 Wn. App. 925, 929, 943 P.2d 676 (1997). Once the defendant properly raises the issue, the State must

6

disprove self-defense beyond a reasonable doubt. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

According to Mr. Soliz, he and Mr. Lemus-Vargas had an argument in the car. Mr. Flores, however, did not hear an argument before he exited the vehicle. According to Mr. Soliz, he then observed Mr. Lemus-Vargas had a knife and tried to get it away from him. The forensic pathologist testified that Mr. Lemus-Vargas had cuts on his ankle, lip, wrist and hairline with a two-inch deep stab wound into the back of his shoulder, and four stab wounds on the right side of his back. A forensic examination of Mr. Lemus-Vargas' car revealed blood staining in and around the driver's seat, as well as between the seat and door. There was blood on the steering wheel, as well as on the console. In contrast, there was no blood staining on the passenger seat or in the front of the front passenger seat area. DNA analysis of blood samples retrieved from inside the vehicle matched Mr. Lemus-Vargas; none matched Mr. Soliz who claimed he was stabbed in the car and bled like a stuck pig. Dr. Selove, the forensic pathologist who performed the autopsy on Mr. Lemus-Vargas, testified that several of Mr. Lemus-Vargas' wounds were defensive wounds. Dr. Selove had an opportunity to analyze photographs of Mr. Soliz's wounds and was of the opinion that those wounds could have possibly been self-inflicted.

Based on the above, sufficient evidence exists to support the jury's finding that Mr. Soliz was guilty of second degree manslaughter. While he alleged self-defense, the State satisfied its burden of disproving self defense beyond a reasonable doubt. It was

7

within the jury's province to weigh the disputed evidence, draw inferences, and decide witness credibility. The presence of conflicting evidence, without more, does not undermine a jury's verdict.

### B. Statement of Additional Grounds (SAG)

Without elaboration, Mr. Soliz asserts in his SAG that he was denied a fair trial because insufficient DNA testing was done and the prosecutor deliberately misled the jury. RAP 10.10(c) provides, "Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant/appellant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." Because Mr. Soliz does not explain what DNA evidence was not tested or insufficiently tested and does not explain what State argument was allegedly misleading, his claims are too vague for us to address.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

8