
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 JUL 22 PM 1: 41

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | DIVISION ONE |
| Respondent, ) | |
| ) | No. 70345-5-I |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| ALFRED VICTOR APODACA, ) | |
| Appellant ) | FILED: July 22, 2013 |

DWYER, J. — Alfred Apodaca appeals from his conviction for assault in the fourth degree. On appeal, Apodaca asserts that the trial court erred in declining to issue four requested self-defense jury instructions. However, there was no evidence presented at trial indicating that Apodaca subjectively believed that he was in danger of injury. Furthermore, even if Apodaca had held such a subjective belief, there was no evidence presented at trial that would support a finding that such a belief was objectively reasonable. Thus, the trial court did not err in selecting its instructions to the jury. Accordingly, we affirm Apodaca's conviction for assault in the fourth degree.

I

On September 27, 2011, Alfred Apodaca and his girl friend of approximately three months, Amy Peapaelalo, were involved in a domestic dispute at Peapaelalo's apartment. The couple was arguing in Peapaelalo's bedroom. Apodaca was sitting on the bed, and Peapaelalo was standing in front of him. At some point, the argument became physical, and Apodaca pushed Peapaelalo onto a piece of furniture. Peapaelalo called the police.

As a result of this incident, the State charged Apodaca with assault in the second degree—domestic violence and harassment—domestic violence.

At trial, Peapaelalo testified that, during the argument, she leaned down to make eye contact with Apodaca and asked him whether he was going to hit her when her children were home. She stated that Apodaca then grabbed her throat with his right hand, sustaining such pressure on her throat that she could not breathe, scream, or talk. While applying this pressure, she said, Apodaca stood up, walked her backward, and pushed her onto a chair. She alleged that, once she was in the chair, Apodaca put his left hand over her mouth and told her that he was "gonna squeeze the fucking life out of you." She estimated that he maintained this pressure for 20-30 seconds, although she acknowledged that she could not be entirely certain. She stated that she did not know what caused Apodaca to eventually let go. She further testified that she had not made any physical contact with Apodaca prior to him grabbing her by the throat.

Apodaca also testified at trial. On direct examination, he told the jury that, before he contacted Peapaelalo in any way, she "put her finger and just kind of

- 2 -

pushed my head like to look up at her." He stated that this contact made him "upset" and "frustrated." On cross-examination, he indicated that he acted "in response to her putting her finger on my face and then opening her hand and pushing my face up to make eye contact with her." He said that the contact made him feel "anger, frustration, confusion." When asked whether he was in complete control, he responded, "I was in – is there – I don't want to say half. I was aware of the situation." He testified that he "reacted" to the contact by placing his left hand on Peapaelalo's collar bone, grabbing her other shoulder, rotating her toward the couch, and pushing her onto it. In response to the State's question, "were you injured?" Apodaca replied, "I wasn't bleeding."

Before trial, Apodaca proposed a number of jury instructions, including four pertaining to self-defense. After all evidence had been presented to the jury, the court met with counsel to discuss which instructions the jury would receive. The court declined to give the proposed self-defense instructions, noting that "[t]here is no basis for a self-defense instruction based upon the testimony that has been presented."

On December 8, 2011, after approximately 90 minutes of deliberation, the jury found Apodaca not guilty of the crimes of assault in the second degree—domestic violence and harassment—domestic violence but found him guilty of the lesser included offense of assault in the fourth degree.

Apodaca appeals.

II

Apodaca contends that the trial court erred by declining to instruct the jury

on self-defense. Specifically, he contends that his testimony that his contact with Peapaelalo was a reaction to Peapaelalo "putting her finger on my face and then opening her hand and pushing my face up to make eye contact with her" was "some evidence" that he had acted in self-defense. We disagree. Nothing in Apodaca's testimony or the remainder of the trial record indicates that he subjectively believed that he was in danger of injury or that, if he had held such a belief, it would have been objectively reasonable. Thus, self-defense instructions were not warranted.

A defendant is entitled to instructions on self-defense when there is "some evidence admitted in the case from whatever source which tends to prove [that an act was committed] in self-defense." State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). Self-defense is at issue when "there [is] evidence that (1) the defendant subjectively feared that he was [in danger of injury];[1] (2) this belief was objectively reasonable; (3) the defendant exercised no greater force than was reasonably necessary; and (4) the defendant was not the aggressor." State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997) (citations omitted).

---

[1] A number of courts, including the court in State v. Callahan, have required the defendant to subjectively fear that he was in danger of grievous bodily harm or death. 87 Wn. App. 925, 929, 943 P.2d 676 (1997). See also, e.g., State v. Werner, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). But, as this court noted in State v. L.B., "[a]ccording to the plain language of RCW 9A.16.020(3), a person has a right to use force to defend himself against danger of injury, 'in case the force is not more than is necessary.'" 132 Wn. App. 948, 953, 135 P.3d 508 (2006). Accordingly, a requirement that the defendant believe he is in imminent danger of death or great or grievous bodily harm "places too high of a standard for one who tries to defend himself against a danger less than great bodily harm but that still threatens injury." L.B., 132 Wn. App. at 953. See also 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.04 cmt., at 263 (3d ed.2008) (noting that the requirement of "great bodily harm" in previous versions had been changed to "injury"). Although the proposed jury instructions contained a correct statement of the law, the respondent's brief quotes the Callahan passage excerpted supra without correcting this misstatement of the law.

A defendant has the initial burden of pointing to evidence in the case "showing that he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable." State v. Dyson, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997). However, because he "is entitled to the benefit of all the evidence," the defendant may assert self-defense even if it is "based upon facts inconsistent with his own testimony." Callahan, 87 Wn. App. at 933. The evidence presented need not be sufficient "to create a reasonable doubt in the minds of the jurors." McCullum, 98 Wn.2d at 488. However, "while the threshold burden of production for a self-defense instruction is low, it is not nonexistent." State v. Janes, 121 Wn.2d 220, 237, 850 P.2d 495 (1993). Indeed, "an instruction on an issue or theory not supported by the evidence is improper." State v. Gogolin, 45 Wn. App. 640, 643, 727 P.2d 683 (1986).

In determining whether to issue self-defense instructions, a trial court must evaluate the evidence both subjectively and objectively. State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). In order to assess the subjective component of the defendant's self-defense claim, the trial court must consider evidence of what the defendant knew when committing the act and determine whether there is evidence that the defendant subjectively believed that he or she was in danger of injury. Read, 147 Wn.2d at 243. In evaluating the objective component of the defendant's self-defense claim, the trial court must consider what a reasonable person would have done in reaction to the situation that prompted the defendant's actions. Read, 147 Wn.2d at 243. Having considered the evidence both subjectively and objectively, the trial court must then determine

whether instruction on self-defense is warranted. Read, 147 Wn.2d at 243. With regard to self-defense instructions,

> [t]he standard for review . . . depends on whether the trial court's refusal to grant the jury instructions was based upon a matter of law or of fact. A trial court's refusal to give instructions to a jury, if based on a factual dispute, is reviewable only for abuse of discretion. The trial court's refusal to give an instruction based upon a ruling of law is reviewed de novo.

State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998) (citation omitted).

Here, the trial court stated that "[t]here is no basis for a self-defense instruction based upon the testimony that has been presented." It is somewhat unclear whether the trial court based this statement on a finding that Apodaca had not provided evidence that he subjectively believed that he was at risk of injury or on a finding that no reasonable person would have responded to the provocation in the manner that Apodaca did. However, a ruling on either basis is supportable.

There was no evidence adduced at trial tending to demonstrate that Apodaca subjectively believed that he was at risk of injury as a result of Peapaelalo's actions. Apodaca did not testify that he subjectively believed that he was about to be injured, nor can such a belief be reasonably inferred from his testimony. Although he testified that Peapaelalo used her finger and open hand to tilt his face upward so that they would make eye contact, Apodaca did not indicate that she did so violently or aggressively. Apodaca described Peapaelalo as "very frustrated," but did not provide any evidence that she intended violence. No evidence was introduced into the record that Peapaelalo had a weapon or

approached him threateningly. Apodaca did not testify that Peapaelalo's touch itself was injurious; when asked whether he was injured, he replied that he "wasn't bleeding." Nor did he testify that he feared future injury. Instead, when asked what his reaction to the contact was, Apodaca stated he was "upset," and "frustrated."

Indeed, Apodaca's own testimony belies his claim that he subjectively believed that he was in imminent danger of injury. Apodaca testified to a number of mental states. He told the jury that he was "frustrated" and "irritated" and that he felt "anger, frustration, confusion." Apodaca did not, however, testify to the one mental state that properly triggers a self-defense instruction: a subjective belief that he was about to be injured. Because there was no evidence presented tending to show such a belief, the trial court did not err by declining to give the proposed self-defense instructions.

Where a defendant fails "to satisfy the subjective element of self-defense, [courts] . . . need not review the trial court's finding regarding the objective element of self-defense." Read, 147 Wn.2d at 244. However, even if Apodaca had subjectively believed that he was in danger of injury, this belief was not objectively reasonable. Apodaca testified to only one fact relative to this belief: that Peapaelalo had used her finger and open hand to tilt his head up. No reasonable person would believe he was at risk of future injury when faced with such minimal contact and no other threatening circumstances. There was no other evidence on the question that would have supported a self-defense claim.

-7-

Accordingly, because there was no evidence adduced at trial tending to demonstrate either that Apodaca subjectively believed that he was in danger of injury or that such a subjective belief would have been objectively reasonable, the trial court properly declined to issue the proposed self-defense instructions.

Affirmed.

We concur: