# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70461-3-I |
| | ) | (Consolidated with |
| Respondent, | ) | No. 70660-8-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| DANIEL EARL NEUMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 15, 2014 |
| | ) | |

LEACH, J. — Daniel Neuman appeals his conviction for second degree assault. He argues that the trial court violated his right to due process when it refused to instruct the jury on self-defense. Because the record does not include any evidence of Neuman's intentional use of any force in self-defense, we affirm.

## FACTS

On August 16, 2012, Rogelio Rosas and his wife, Margarita Antonio, were driving home in their green Toyota van with their two children, 17-year-old Uri and 14-year-old Ashlee. Antonio was driving, and Uri was in the front passenger seat, with the passenger side window rolled down. As the van neared an intersection, the light turned yellow, and Antonio braked suddenly to stop. Neuman, who was driving a maroon Volkswagen Passat, pulled up on the right side of the van. Both Antonio and Uri noticed that Neuman's car was very close to the van's passenger side. All four family members heard Neuman yelling, and Uri heard Neuman say something about "stupid Mexicans." All four saw Neuman

pointing a handgun at Uri. Antonio described Neuman's hand holding the gun as "stretched out," and both Ashlee and Uri testified that they saw the barrel of the gun extend out of Neuman's window. Uri immediately rolled up his window. After the light turned green, Neuman lowered the gun and pulled his car in front of the van. He then slammed on his brakes at least twice.

After a short distance, Neuman turned off into a shopping center. Uri called 911 and reported the incident. Police arrested Neuman at the shopping center and found a handgun in open view in Neuman's car. The State charged Neuman with one count of second degree assault.

At trial, Neuman denied pointing the gun at Uri. He testified that while driving home, he saw a green Toyota van either stopped or driving very slowly in front of him. He changed lanes to go around the van, and as he passed it, honked his horn, "just kind of to say, hey, you know, we're coming, there's people behind me, you know, maybe turn on your turn signal, turn on your flashers, something, you know." Neuman testified that the van then came from behind him "and cut across in front of me, trying to run me into oncoming traffic." He testified that he was very scared and felt like the driver of the van was trying to kill him. When the two vehicles stopped side by side at a stoplight, Neuman saw the passenger roll the passenger side window down. Believing that the occupants of

the van might try to shoot him, he pulled a handgun out of his backpack and placed it on his lap. Neuman testified that he had no intention of pointing the gun at the van's occupants or even letting them see it. He stated, "I wasn't trying to scare them . . . I never intended to [sic] them to see that. It was just merely a precaution for how they were acting to me." He denied raising the gun off his lap at any point. He believed that Uri saw the gun only because the van was higher off the road than his car.

Neuman submitted proposed jury instructions on self-defense. The trial court refused to give the instructions. A jury found Neuman guilty as charged. Neuman appeals.

## ANALYSIS

Citing the due process clause of the Fourteenth Amendment to the United States Constitution, Neuman contends the trial court violated his right to present a defense when it declined to instruct the jury on self-defense. We disagree.

The Fourteenth Amendment guarantees criminal defendants "'a meaningful opportunity to present a complete defense.'"[1] Consistent with this

---

[1] Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

right, a defendant is entitled to have the jury instructed on his theory of the case where the law and evidence support it.[2]

As charged here, a person commits second degree assault when he assaults another with a deadly weapon.[3] "[S]pecific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree."[4]

The law permits a person to act in self-defense when he reasonably believes that he is about to be injured and uses no more force than necessary to prevent the offense.[5] A trial court must instruct the jury on self-defense if the record includes "any evidence" the defendant acted in self-defense.[6] However, a defendant is not entitled to a self-defense instruction if he denies any use of any intentional force.[7] "One cannot deny that he struck someone and then claim that he struck them in self-defense."[8]

---

[2] State v. May, 100 Wn. App. 478, 482, 997 P.2d 956 (2000).
[3] RCW 9A.36.021(1)(c).
[4] State v. Byrd, 125 Wn.2d 707, 713, 887 P.2d 396 (1995).
[5] RCW 9A.16.020(3); State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).
[6] State v. Adams, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982).
[7] State v. Gogolin, 45 Wn. App. 640, 643-44, 727 P.2d 683 (1986).
[8] State v. Aleshire, 89 Wn.2d 67, 71, 568 P.2d 799 (1977).

We review a trial court's refusal to give a self-defense instruction based on insufficient evidence for abuse of discretion.[9] A trial court abuses its discretion if it exercises it in a manifestly unreasonable manner or bases its decision upon untenable grounds or untenable reasons.[10]

Neuman argues that the trial court should have instructed the jury on self-defense because he believed the driver of the van was trying to kill him and this was sufficient evidence that he acted in self-defense. But Neuman specifically denied pointing the gun at Uri, which was the basis of the assault charge. Neuman's denial defense precluded a self-defense instruction, and the trial court did not abuse its discretion in refusing to give one. Furthermore, as the trial court noted, even without a self-defense instruction, Neuman was able to argue that he lacked the intent necessary to commit assault because he did not intend the family to see the gun. The lack of a self-defense instruction did not violate Neuman's right to present a defense.

Citing State v. Callahan,[11] State v. Redwine,[12] and State v. Fondren,[13] Neuman argues that the evidence warrants a self-defense instruction even when

---

[9] State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002).
[10] Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).
[11] 87 Wn. App. 925, 943 P.2d 676 (1997).
[12] 72 Wn. App. 625, 865 P.2d 552 (1994).
[13] 41 Wn. App. 17, 701 P.2d 810 (1985).

a defendant denies the use of force, as long as evidence from any source shows that the defendant intentionally used force. In Callahan, the defendant shot the victim after a "road rage" incident. The defendant admitted that he brandished the gun at the victim out of fear for his safety but denied intentionally shooting the victim, claiming the gun discharged accidentally.[14] In Redwine, the defendant saw a process server on his property reaching for a zippered, soft-sided case. Afraid the case contained a weapon, he ran into his house, grabbed a shotgun and raised it over his head so that the process server would see it.[15] In Fondren, after a fight broke out on the defendant's property, the defendant fetched a shotgun, hoping that its presence would stop the fight.[16] The gun fired, killing a bystander.[17] The defendant denied pointing the gun at anyone, claiming that it went off accidentally following a struggle for the gun.[18]

These cases are distinguishable. In all three, the defendants purposely displayed a weapon in order to de-escalate or prevent an altercation. Each admitted to an intentional act of force and asserted the lawful use of that force as a defense. In contrast, Neuman denied an intentional act of force. He testified

---

[14] Callahan, 87 Wn. App. at 928.
[15] Redwine, 72 Wn. App. at 627-28.
[16] Fondren, 41 Wn. App. at 19-20.
[17] Fondren, 41 Wn. App. at 20.
[18] Fondren, 41 Wn. App. at 20.

that he never pointed the gun at anyone in the van and that he did not want the

family even to see the gun because he did not want to frighten them. The record

contains no evidence supporting any claim of the lawful use of force. The trial

court properly refused to instruct the jury on self-defense.

Affirmed.

Leach, J.

WE CONCUR:

Spearman, C.J.    Schindler, J.