
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34902-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIE C. ASHER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — William Asher appeals from his conviction at trial for second degree assault while armed with a firearm, taking issue with the rejection of his self-defense claim and with the court's refusal to grant him an exceptional sentence. Since the jury and the trial court were within their rights to reject the defense and his proposed mitigating factors, we affirm.

## FACTS

This case involves two neighbors in rural Spokane County whose relationship deteriorated over time. The tipping point came in 2011 after Mr. Asher buried a dead horse near his property line with neighbor Tom Stephens. Mr. Stephens believed that the carcass was buried too shallow, resulting in dogs and coyotes exposing the grave and leading to stench and flies on his property. Mr. Asher disagreed with these claims.

After that incident, the two men seldom conversed without insults and vulgarities being exchanged. The incident leading to the current charge occurred September 7, 2015. That day Stephens noted that several of his calves had suffered injuries to their legs. He believed the cause was a wire fence of Asher's that Stephens believed was six inches on to his property.

Seeing Asher outside, Stephens stood on the second rail of a different fence[1] and pointed out the post marking the property line and told Asher he needed to move the wire fence because of the injuries it was causing. An argument began. According to Stephens, Asher pulled out a gun and fired it into the ground in front of him. He then raised the gun toward Stephens. Stephens then left to call 911.

Asher testified that Stephens cursed at him and threatened to kill him, and then began climbing the fence. Asher warned him to stay back and told him to go home in order to call 911. When Stephens refused to stop climbing the fence, Asher fired the gun into the ground.

Several sheriff's deputies responded. Asher told one of them that he intentionally fired into the ground in order to scare Stephens. He also told the deputy that he did not fear for his own safety, but fired the gun to prevent Stephens from moving the wire fence.

---

[1] The area in question is a small triangular plot where several fences come together.

The prosecutor filed charges of harassment and second degree assault while armed with a firearm. The matter proceeded to jury trial twice, with the first jury unable to return a verdict. The second jury acquitted on the harassment count, but convicted Mr. Asher of second degree assault while also finding that he was armed with a firearm at the time of the offense.

The defense sought an exceptional sentence, arguing that two mitigating factors existed—Mr. Asher was 69 years of age and had no prior criminal history, and that Mr. Stephens was the initiator of the conflict. The trial court agreed that Mr. Asher's lack of criminal history was "a huge mitigating factor," but rejected the argument that Stephens initiated the conflict. The court found Mr. Asher's contentions unpersuasive, noting that he had returned to the scene with his gun, and that he could have called 911 instead of urging Stephens to do so. In response to a written statement that he feared for his life, the judge also told Asher that if he truly had been afraid for his life, firing the gun into the ground would not have protected him. The court also was concerned that Asher did not understand how he had agitated the situation and had never done anything to calm matters.

The court declined to impose an exceptional sentence, but did impose a bottom end term of three months plus a 36 month enhancement. Mr. Asher promptly appealed to this court. A panel considered the matter without hearing argument.

3

ANALYSIS

Mr. Asher raises two arguments in this appeal. First, he contends the evidence was insufficient to convict him because the State failed to disprove his claim of self-defense. He also argues that the court erred in rejecting his request for an exceptional sentence. We review the two claims in the order presented.

*Sufficiency of the Evidence*

The claim of insufficient evidence due to the failure to disprove self-defense fails for a very simple reason. Since the jury was not required to believe that evidence, the remaining evidence amply supports its verdict.

Sufficiency of the evidence review is subject to very well settled standards. Appellate courts review such challenges to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* This court also must defer to the finder of fact in resolving conflicting evidence and determining credibility. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

When a jury is instructed on self-defense, the State is required to disprove the defense beyond a reasonable doubt. *State v. Acosta*, 101 Wn.2d 612, 615-616, 683 P.2d 1069 (1984). Self-defense is evaluated "from the standpoint of a reasonably prudent

4

person who knows all the defendant knows and sees all the defendant sees." *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). This analysis involves both subjective and objective components. *Id*. at 242-243. For the subjective component, the jury must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *Id*. at 243. For the objective component, the jury must "determine what a reasonable person would have done if placed in the defendant's situation." *Id*.

These two components of self-defense break down into four elements: "(1) the defendant subjectively feared that he was in imminent danger of death or great bodily harm; (2) this belief was objectively reasonable"; "(3) the defendant exercised no greater force than was reasonably necessary"; and "(4) the defendant was not the aggressor." *State v. Callahan*, 87 Wn. App. 925, 929, 943 P.2d 676 (1997). Disproof of any one of these elements negates the self-defense claim. *Id*.

Here, the prosecutor argues that the evidence allowed the jury to conclude that none of these elements were satisfied. We need not go that far in our analysis. A couple of examples seen in the record show that the jury had evidentiary reasons for rejecting self-defense. As noted previously, a deputy sheriff recited for the jury his conversation with Mr. Asher following the incident. In that conversation, Mr. Asher told the deputy that he did not fear for his own safety. Although that statement conflicted with Mr. Asher's trial testimony, the jury was free to credit the original statement and conclude

5

that Mr. Asher did not subjectively believe there was need to shoot the gun. This evidence disproved the first element of self-defense.

Another example involves the second element. Given the detailed history of the previous confrontations between Asher and Stephens that was put before the jury, none of which developed into a physical altercation, the jury might also have concluded that it was not objectively reasonable for Mr. Asher to believe he was in danger of physical harm from Mr. Stephens. This evidence disproved the second element of self-defense.

In short, the evidence allowed the jury to conclude that one or more elements of self-defense were not present during this incident. Accordingly, the State disproved self-defense beyond a reasonable doubt. Although there was evidence supporting the defense, there was also contrary evidence that reasonably allowed the jury to conclude, as it did, that Mr. Asher was not acting in self-defense.

The evidence supported the jury's verdict that Mr. Asher assaulted his neighbor with a firearm. The evidence was sufficient.

*Sentencing*

Mr. Asher also contends that the trial court erred in failing to impose an exceptional sentence. He is unable to establish that the trial court abused its discretion.

The court imposed a standard range sentence. By statute, reaffirmed by our case law, Mr. Asher cannot challenge that sentence. RCW 9.94A.585(1); *State v. Grayson,* 154 Wn.2d 333, 338, 111 P.3d 1183 (2005); *State v. Friederich-Tibbets*, 123 Wn.2d 250,

252, 866 P.2d 1257 (1994) (refusal to grant exceptional sentence). Instead, all he can challenge is the trial court's failure to follow a *mandatory* procedure at sentencing. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). Process-based challenges must point to a failure of the trial court to follow a specific process required by the Sentencing Reform Act. *Id*. The refusal to consider a statutorily authorized procedure is an abuse of discretion. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Mr. Asher cannot establish error. The trial court considered his request for an exceptional sentence and even determined that one of the mitigating factors he urged the judge to consider was present. However, the court was not required to grant the requested sentence. An exceptional sentence is available for those instances where the facts and circumstances of the case present "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535.

The standard ranges reflect the legislative balancing of the purposes of the Sentencing Reform Act of 1981, ch. 9.94A RCW. *State v. Pascal*, 108 Wn.2d 125, 137-138, 736 P.2d 1065 (1987). Since criminal history is one of the factors considered in establishing the standard range, the absence of criminal history is not a basis for an exceptional sentence. *Id*. at 137. Although the trial judge was impressed with Mr. Asher's lack of criminal history, it simply was not a compelling reason to vary from the

legislature's determination of an appropriate sentence range. The trial court did not find that Mr. Stephens was the initiator of this incident and, thus, that potential mitigating circumstance was not present in this case. The request for an exceptional sentence failed.

As it was required to do, the trial court considered the exceptional sentence request. There was no abuse of the trial court's sentencing discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, C.J.