IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31054-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER J. BORDEAU, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jennifer Bordeau was found guilty of second degree assault after she struck Kenneth Kirschner with the handle of a splitting maul. On appeal, Ms. Bordeau contends the State introduced insufficient evidence to show that she did not act in self-defense. She also argues that the trial court erred in failing to enter written factual findings and legal conclusions following a CrR 3.5 hearing. Because we find that sufficient evidence supports her conviction and that the court's failure to enter written findings was harmless, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Late in the evening on February 1, 2012, Mr. Kirschner was riding his bicycle in the town of Cle Elum when a car drove past him and the driver, whom he initially thought he recognized, waved at him. Mr. Kirschner testified that when he

acknowledged the wave, the vehicle sped up momentarily before stopping abruptly. Ms. Bordeau—a woman he had never seen before—got out of her car and began yelling nonsensically at him.

Mr. Kirschner dialed 911 and was attempting to read Ms. Bordeau's license plate number to the operator when Ms. Bordeau struck him with the maul. After regaining consciousness, he grabbed her by the neck and threw her to the ground to defend himself. The police arrived shortly thereafter. When the officers arrived, Ms. Bordeau was standing in the middle of the road, "throwing her arms and muttering utterances." Report of Proceedings (RP) at 161. Mr. Kirschner was still on the phone with the 911 operator.

The trial court conducted a CrR 3.5 hearing the morning of trial to determine the admissibility of several statements Ms. Bordeau made to police following the altercation. The court orally ruled that Ms. Bordeau's statements were admissible based on its determination that she was not under arrest at the time she made them. But the court did not enter written factual findings and legal conclusions.

At trial, Ms. Bordeau denied striking Mr. Kirschner with the maul. She testified that Mr. Kirschner grabbed her by the neck as she was walking away from him, and that only then did she grab his hand and push him away in self-defense. Despite having been instructed on Ms. Bordeau's theory of self-defense, the jury found Ms. Bordeau guilty of second degree assault.

No. 31054-0-III
*State v. Bordeau*

## ANALYSIS

Ms. Bordeau raises two arguments on appeal. She first argues that the evidence was insufficient to support her second degree assault conviction because the State failed to disprove self-defense beyond a reasonable doubt. Second, she contends the trial court erred in failing to enter written findings and conclusions following the CrR 3.5 hearing. We address these arguments in turn.

*I. Sufficiency of evidence*

Ms. Bordeau contends that the State failed to disprove self-defense, and therefore insufficient evidence supports her conviction of second degree assault. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Where a defendant raises the issue of self-defense, "the State must disprove self-defense in order to prove that the defendant acted unlawfully." *State v. Redwine*, 72 Wn. App. 625, 629, 865 P.2d 552 (1994); *State v. Miller*, 89 Wn. App. 364, 367, 949 P.2d 821 (1997). We "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Ms. Bordeau's theory at trial was that she only grabbed Mr. Kirschner's hand in self-defense after Mr. Kirschner grabbed her by the neck as she walked away from him.

3

No. 31054-0-III
*State v. Bordeau*

The court provided a jury instruction on self-defense. It also gave a "first aggressor" instruction.[1] The jury's verdict reveals that it found Ms. Bordeau to be the first, or the only, aggressor.

The evidence presented at trial was sufficient to permit the jury to find that self-defense was disproved beyond a reasonable doubt. The jury heard testimony from Mr. Kirschner that Ms. Bordeau came at him with a baseball bat while he was trying to read her license plate and assaulted him "for no reason." RP at 107-08. According to Mr. Kirschner, Ms. Bordeau was cursing and yelling nonsensically before she struck him with the maul, knocking him unconscious.

Mr. Kirschner described grabbing Ms. Bordeau's neck in self-defense after regaining consciousness:

> A. She's standing over me telling me she's going to kill me and I got up quick and my only thought was crowd her so she can't swing the bat at me and I grabbed her esophagus and I threw her back to get her away from me.
> Q. Do you know where she fell down?
> A. She fell down into the street.
> Q. Then what happened?

---

[1] The "first aggressor instruction" provided that

[n]o person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers at 121.

4

A. She got back up and I was just distracted. I was looking to see whether the police were on the way. I heard them say they're right there on First Street. I was backing away from the car and she began swinging her bat at the taillight or stick or whatever it was and she at one point made a move like she was going to come at me again and that's when I told her, you know, you stay away from me and she kept her distance so I started backing away and I saw the lights of the officer and just started walking briskly away from her car and towards the officer's lights.

Q. Okay. Now, at any time during this entire incident did you touch her?

A. When I grabbed her throat to push her back and get her away from me, yes.

Q. What had she done before you did that?

A. She had swung at me with her hand initially trying to grab my phone. She struck me with the bat at least twice and was assaulting me so.

Q. All right. And other than that, did you ever just n [sic] attack her?

A. No. No, ma'am. No, ma'am. I was just trying to get away from her and figure out what was going on.

RP at 111-12.

Mr. Kirschner was on the phone with the 911 operator throughout the entire altercation, and the recording of the 911 call was played for the jury. Although the defense argued that the sounds in the tape recording did not indicate that Mr. Kirschner had been hit, "[t]he trier of fact is the sole and exclusive judge of the evidence." *State v. Hathaway*, 161 Wn. App. 634, 645, 251 P.3d 253 (2011).

The testimony of an officer who responded to the 911 call also undermined Ms. Bordeau's theory of self-defense. According to the officer, Ms. Bordeau told him that Mr. Kirschner "came too close to her vehicle and admitted to striking him because he got too close to her vehicle." RP at 165.

The jury was entitled to believe Mr. Kirschner and disbelieve Ms. Bordeau. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## *II. CrR 3.5 hearing*

Ms. Bordeau next contends the trial court erred in failing to enter written findings of fact and conclusions of law supporting its decision to admit statements she made to the police. Ms. Bordeau's trial lawyer never filed a written motion to suppress and initially indicated that there were no CrR 3.5 issues. But when the State identified statements by Ms. Bordeau that it wished to offer at trial during a CrR 3.5 hearing held the morning of trial, Ms. Bordeau's lawyer argued that his client's statements were inadmissible, having been made during a custodial interrogation without the administration of *Miranda*[2] warnings.

The State offered the testimony of the officer who responded to the 911 call. He testified that after he arrived, Ms. Bordeau

> kept shaking her hands and asked what was wrong. She said she had been choked and her hand hurt and she had blocked [sic] coming from one of her hands and she kept flinging her hands throwing blood so I asked for an aid car to check to make sure she had no significant injuries.
> Q. Then did you talk to her at all?
> A. I did. I tried to ask her what was going on. When I arrived I could clearly see a large stick of some sort laying on the ground by her open driver door, which was consistent with what . . . Mr. Kirschner was

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

reporting. I asked Ms. Bordeau what had occurred and she was very difficult to understand.

RP at 56-57. Ms. Bordeau told the officer she had become upset while she was driving after seeing an individual that she knew. After turning onto First Street in Cle Elum,

she saw a male subject on a bicycle on a cell phone. Ms. Bordeau told me she believed somebody to be calling 911 because she was angry at herself. So she pulled over. As the male subject approach[ed], she got out of the car and decided to get back into her car and drove off. This is when the story got kind of confusing from her end.

THE COURT: Have you placed her under arrest at this point?

[OFFICER]: I have not because I had not deemed what had occurred at this point.

THE COURT: Okay.

[OFFICER]: She said that she knew she should leave so she drove down the road about a block. She pulled over at which point Mr. Kirschner was either on his cell phone or he wasn't sure. Ms. Bordeau got out of the vehicle again. This time she had obtained a large stick, stick which I identified on the ground which was later a splitting maul without the head on it. She started approaching Mr. Kirschner and began yelling at him and then some blows were exchanged. She was unable to tell me exactly what had happened. All I could really gather from Ms. Bordeau was that she said that she had been choked and that was it. She was unable to tell me what actually occurred which was clear from the video.

RP at 58-59.

After hearing from the officer and Ms. Bordeau, the trial court ruled that Ms. Bordeau's statements were admissible because she was not under arrest at the time she made them. The court never entered written findings or conclusions.

A trial court is required to enter written findings and conclusions following a hearing on the admissibility of a statement made by a defendant. CrR 3.5(c). "The

purpose of written findings and conclusions is to promote efficient and precise appellate review." *State v. Landsiedel*, 165 Wn. App. 886, 893, 269 P.3d 347 (2012). The State asserts that findings and conclusions were not entered at the conclusion of the pretrial hearing because "[t]here was no time to enter written findings at that time." Br. of Resp't at 11. The record confirms that the hearing occurred immediately before trial, while the jury was waiting in the courtroom.

To comply with CrR 3.5(c), the trial court should have entered findings and conclusions at a later time. But "failure to enter findings required by CrR 3.5 is considered harmless error if the court's oral findings are sufficient to permit appellate review." *State v. Cunningham*, 116 Wn. App. 219, 226, 65 P.3d 325 (2003). Ms. Bordeau does not make a challenge on the merits to the trial court's ruling admitting evidence of her statements.

Here, the trial court's oral findings are sufficient. In announcing its ruling at the conclusion of the hearing, the court explained,

> Ms. Bordeau was not under arrest. She didn't even feel like she was under arrest until she was told she was under arrest. So statements are coming in. Okay. If we have to make a more detailed finding we can do that subsequently.

RP at 68.

The Fifth Amendment right against compelled self-incrimination requires police to advise the accused of her right to remain silent and her right to an attorney before

8

conducting a custodial interrogation. *Miranda*, 384 U.S. at 479. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)). "[T]he only relevant inquiry is how a reasonable [wo]man in the suspect's position would have understood h[er] situation." *Id.* at 442.

At the pretrial hearing, the officer testified that Ms. Bordeau had not been placed under arrest when she made the statements. He acknowledged on cross-examination that he did not believe Ms. Bordeau was free to leave. For purposes of *Miranda*, however, "the fact that a suspect is not free to leave during the course of an investigative stop does not make the encounter comparable to a formal arrest." *Cunningham*, 116 Wn. App. at 228 (citing *State v. Walton*, 67 Wn. App. 127, 130, 834 P.2d 624 (1992)).

While Ms. Bordeau testified that she "probably" did not feel free to leave when she was talking to the officer, RP at 64-65, her responses to the court's questioning indicate otherwise:

> THE COURT: Okay. Did you want to tell your side of the story about when you were interviewed? Do you want the statement that you made to [the officer] to come in? Don't you want that?
> MS. BORDEAU: I mean—yeah.
> THE COURT: That's what I thought.
> MS. BORDEAU: Yeah, I have nothing to hide.

9

No. 31054-0-III
*State v. Bordeau*

RP at 63. The trial court's oral ruling was sufficient for us to determine that it was supported by Ms. Bordeau's testimony and that of the responding officer. Ms. Bordeau was not prejudiced by the trial court's failure to enter written findings and conclusions following the CrR 3.5 hearing.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Lawrence-Berrey, J.

10