[No. 38939-4-I.    Division One.    December 8, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD ALAN
DYSON, *Appellant*.

*Gregory C. Link* and *Kira McRae* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Howard P. Schneiderman, Deputy,* for respondent.

PER CURIAM — Explicit evidence that a defendant intended to assault a victim is not necessary in order to provide the evidentiary basis for a self-defense instruction. What is necessary is evidence that the action that caused the victim's injury was not accidental, but rather made in order to protect the defendant. Here Richard Dyson testified that after the victim put him in a choke hold, he engaged in passive resistance by rising up to get air. By doing this he caused the victim to be injured. This evidence that Dyson acted to protect himself supports a self-defense instruction. Accordingly, the trial court erred by denying Dyson's requested self-defense instruction. We reverse.

## FACTS

The alleged assault occurred when Dyson went to the office of his lawyer, Jeffrey Ouimet, to fire him and to recover his retainer. Accompanying Dyson was his elderly mother, Violet Dyson. While there, during an altercation with

paralegal Jerry Katz, Dyson caused Katz to fall through a window and cut his arm. Both sides of the altercation testified to differing versions of the events.

According to Ouimet's testimony, Dyson became upset after a dispute regarding how much money Ouimet would refund to Dyson from the retainer. During a heated discussion over the retainer and whether Dyson was entitled to take Dyson's client file, Katz came in and asked Dyson to lower his voice. Dyson then started to leave, taking the client file off Ouimet's desk. Katz placed his hand on the file and told Dyson that he could not take the file.

Ouimet testified that Dyson responded by lunging at Katz and knocking Katz into the window of the office door. Katz similarly testified that Dyson pushed him into the office door, causing Katz to hit his elbow. Katz's elbow was cut from striking the window, requiring stitches.

According to Dyson's version of events, he initially became upset with Ouimet because the check Ouimet wrote was postdated one day and Ouimet refused to write another check. Dyson agreed he was yelling at Ouimet and that he was upset. As he and his mother started to leave, his mother took a file that Dyson had left on Ouimet's desk. After Ouimet put his hand on Dyson's mother to stop her, Dyson told him to keep his hands off his mother. According to Dyson, Ouimet put his arm around Dyson's head and began punching his shoulder.

Dyson testified that Katz then joined into the fray by putting Dyson "in a sleeper hold." Katz pushed Dyson against a table. According to Dyson, he could not breathe because both of Katz's arms were around him.

Q   [Defense Counsel] You said Mr. Katz was behind you with his arm around your neck?

A   [Dyson] Both arms like this because in a sleeper hold that's the position like that.

Q   What were you doing while he was doing this?

A   I was holding with a passive resistance because I had my file in my arm like this at all times.

Q   And then what happened after the table?

A   Well, I was almost losing consciousness so I had to raise up for some air, so I raised up like this and I went back like this with my head.

. . . .

And I raised up like this, and then Katz is in control, and so he has got me like this and he is pulling me, you know, but I don't know if he lost his balance or what because the next thing I know we are being twisted around and he goes into the door . . . .

Dyson testified that he did not punch or push anybody. On cross-examination, he reiterated that Katz had him in a sleeper hold, one arm in front of the neck, one in back, and that he was losing consciousness when Katz dragged him to the table. He said he was using only a passive resistance to this.

Violet Dyson testified that Katz had a "real chokehold" on her son and that her son's face was red and he was not breathing well.

Q   [Defense Counsel] Now, you have described that they [Ouimet and Katz] had their arms around him?

A   [Violet Dyson] Yes.

Q   And what happened then?

A   Well, they kept on pounding and wobbling all over the room, and then they bumped into a table and chair and then they bumped into the door and I heard a glass crack.

Q   Did you see how the glass cracked?

A   When that Katz stumbled into the door, you know, his weight and all. They were pushing and they got into the door.

She testified, "It was such a tussle it's hard for me to explain, but they had him close so much I could hardly see the top of him."

Q   Now, did you ever see your son swing at either one of them?

A   No. He didn't have a chance to swing at anybody . . . .

Q   Did you see him kick at anyone or anything like that?

A   No. He couldn't.

Q   Did he grab anyone at any point?

A   No.

Q   Now, from the point you gave him the file and he was holding it, did he do anything with his arms in an aggressive way?

A   No. He was holding the folder and they were pounding on him and bent over so you can't do anything like that.

The trial court denied Dyson's request for a self-defense instruction. The jury found him guilty of assault in the third degree.

## ANALYSIS

██ Where self-defense negates an essential element of a crime, the State must prove the absence of self-defense beyond a reasonable doubt,[1] if the evidence supports the giving of such an instruction.[2] A person commits third degree assault when he or she "[w]ith criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering[.]"[3] RCW 9A.08.010(1)(d) provides:

A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

RCW 9A.16.020 provides in part:

---

[1]*State v. McCullum*, 98 Wn.2d 484, 495-96, 656 P.2d 1064 (1983).

[2]*State v. Theroff*, 95 Wn.2d 385, 389, 622 P.2d 1240 (1980).

[3]RCW 9A.36.031(1)(f).

The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:

. . . .

(3) Whenever used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary[.]

■ ■ We agree with Dyson that a self-defense instruction is necessary, when supported by the evidence, in a third degree assault case. In *State v. Acosta*, the court found that self-defense negated the knowledge element of second degree assault and that self-defense also rebuts the "unlawful" element of assault.[4] In *State v. Hanton*, the court found that self-defense negated the element of recklessness, which requires that a person disregard a substantial risk that a wrongful act may occur, because self-defense "as defined, is not wrongful."[5] To apply the reasoning of *Hanton*, because self-defense is by statute a lawful act, it negates the "unlawfulness" element of criminal negligence. In other words, because a person who acts in self-defense is not "fail[ing] to be aware of a substantial risk that a wrongful act"[6] may occur, self-defense negates the requirement of a "wrongful act."

■ The critical question here is whether the evidence supported a self-defense instruction. A defendant is entitled to a self-defense instruction only if he or she offers credible evidence tending to prove self-defense.[7] To establish self-defense, a defendant must produce evidence showing that he or she had a good faith belief in the necessity of force

---

[4]*State v. Acosta*, 101 Wn.2d 612, 618, 683 P.2d 1069 (1984).

[5]*State v. Hanton*, 94 Wn.2d 129, 133, 614 P.2d 1280, *cert. denied*, 449 U.S. 1035 (1980), *as construed by State v. Acosta*, 101 Wn.2d at 617. *See also McCullum*, 98 Wn.2d at 495 (self-defense negates unlawfulness element of intent).

[6]RCW 9A.08.010(1)(d).

[7]*McCullum*, 98 Wn.2d at 488; *State v. Hendrickson*, 81 Wn. App. 397, 401, 914 P.2d 1194 (1996).

and that that belief was objectively reasonable.[8] When a defendant claims a victim's injuries were the result of accident rather than caused by the defendant's acts, the defendant cannot claim self-defense.[9] This is because a defendant is not entitled to have a jury instruction unless there is sufficient evidence to support a theory or defense.[10]

The State argues that there is no credible evidence of self-defense, asserting that Dyson claimed that Katz's injuries were accidental. In its brief, the State asserts that Dyson *"testified* that Jerry Katz *accidentally* fell through the door."* (Emphasis added.) Our review of the record indicates that Dyson did not testify that it was "accidental" that Katz fell. The State draws the inference of accident from Dyson's repeated testimony that he used only "passive resistance" in response to Katz's sleeper hold. The State asserts that this testimony "suggest[s] that Katz accidentally fell through the door." Contrary to the State's theory, "passive resistance" does not automatically equate to "accident." Especially here where Dyson testified that he acted to dislodge Katz from him because he was starting to lose consciousness. The inference from this testimony is not accident but rather that Dyson was acting to protect himself.

The State also asserts in its brief that "[t]he defendant denied . . . that he caused Katz to fall through the door." This is not accurate. Rather, Dyson could not describe the specifics of what happened after he rose up to get air and dislodged Katz. This does not preclude a self-defense instruction. In *State v. Hendrickson*, we held that an explicit statement of intent is not necessary to receive a self-defense instruction and the fact that a defendant does not

---

[8]*State v. Bell*, 60 Wn. App. 561, 566, 805 P.2d 815, *review denied*, 116 Wn.2d 1030 (1991).

[9]*State v. Gogolin*, 45 Wn. App. 640, 643-44, 727 P.2d 683 (1986).

[10]*Theroff*, 95 Wn.2d at 389.

recall the particular blow does not preclude the inference that a person intended to defend herself.[11]

The State argues that Dyson's case is like *State v. Gogolin* in which a defendant did not receive a self-defense instruction because he denied pushing the victim, but claimed that she simply fell backward down the stairs, hitting her head.[12] However, unlike *Gogolin*, Dyson did not deny causing Katz to strike the door, injuring his arm. Rather, Dyson claimed Katz's injury occurred in the course of a physical struggle when he rose up and caused Katz to lose his balance and fall against the door. Under these circumstances, the trial court erred in denying the requested instruction, and we reverse and remand for a new trial.[13]

---

[11]*Hendrickson*, 81 Wn. App. at 401.

[12]*Gogolin*, 45 Wn. App. at 642-43.

[13]In a pro se brief, Dyson raises a number of trial errors, including a claim of improper impeachment. Since we remand his case, we will not reach these arguments. In any event, our review of the record reveals his assertions are not supported by the record.