FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42838-5-II |
| Respondent, | |
| v. | |
| KODY CHIPMAN, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Kody Chipman appeals his jury convictions for vehicular assault and hit and run. He also appeals his exceptional sentence for one vehicular assault count. He argues that (1) the information failed to provide notice of vehicular assault's proximate-cause element, (2) the trial court erred by refusing to instruct the jury on self defense, (3) the trial court erred by refusing to allow expert evidence on Chipman's generalized anxiety disorder, and (4) the exceptional sentence was wrongly based on an injury the legislature contemplated in setting out the elements for vehicular assault.

We hold that the information's language gave Chipman sufficient notice of the proximate-cause element. Because there was insufficient evidence of Chipman's good faith belief that he was about to be harmed, the trial court properly refused to give the self-defense instruction. The trial court was within its authority to impose an exceptional sentence based on the jury's finding regarding the victim's injuries.[1] We affirm.

---

[1] We do not address whether the trial court should have allowed expert testimony because it was relevant only to Chipman's self-defense theory.

FACTS

I.  BACKGROUND

Around 6:00 P.M. on March 31, 2011, Chipman drove his car onto a private drive that led to an old fire station where a Boy Scout event was being held. Driving quickly into the station's parking lot, Chipman braked hard, stopping several feet from Dan Kitchings, the father of one of the scouts. Concerned, Kitchings and his father-in-law, Dee Cooper, knocked on Chipman's driver's-side window and asked Chipman to roll down the window so they could speak with him.[2]

Because Chipman rolled down the car window only slightly, Kitchings and Cooper were unable to hear him well over the car's loud engine, so they asked him to open his car door. Chipman opened the door about a foot, and then Cooper opened the door farther. Kitchings and Cooper put themselves between the open car door and the car and asked Chipman to turn his car off, but he did not.

While Kitchings and Cooper were attempting to communicate with Chipman, some other unidentified person said, "Call the police." Report of Proceedings (RP) (Oct. 10, 2011) at 87. Immediately after, and with the door still open, Chipman abruptly drove the car backwards, knocking Kitchings and Cooper to the ground, and sped away. Shortly after, Chipman was located and arrested.

---

[2] Kitchings and Cooper thought Chipman might have been impaired, based on his alleged strange behavior—apparently laughing after coming to a stop right in front of Kitchings, fidgeting back and forth, staring down and failing to make eye contact. Their concern was only heightened by comments they claimed to have heard Chipman make: Kitchings heard him say that he was late for a Narcotics Anonymous meeting; and Cooper heard him say he had just exited the I-5 freeway, which was about four miles from the fire station. At trial, however, a certified drug recognition expert (who was also a City of Olympia police officer) testified that she had examined Chipman on March 31 shortly after the incident and had concluded that Chipman was not under the influence of any intoxicants at that time.

2

As a result of the incident, Kitchings suffered a cranial fracture and brain hemorrhage, which required three brain surgeries. Cooper suffered two pelvic fractures, a scalp contusion, a laceration on the back of the head, and several broken teeth.

II. PROCEDURE

The State charged Chipman with two counts of vehicular assault and one count of hit and run. The State alleged an aggravating factor for one of the two counts of vehicular assault: "[Kitchings's] injuries substantially exceed[ed] the level of bodily harm necessary to satisfy the elements of the offense." Clerk's Papers (CP) at 11.

In a pretrial omnibus order, Chipman declared his intent to assert self defense at trial. At a pretrial hearing, the trial court withheld ruling on this issue, stating, "We'll see how the facts develop at trial." RP (Oct. 3, 2011) at 89. For the time being, the court prohibited Chipman from using the words "self-defense" and "lawful use of force" during voir dire and opening statements. RP (Oct. 3, 2011) at 91.

In conjunction with his self-defense theory, Chipman wanted to present expert testimony through a psychologist of his generalized anxiety disorder and how this disorder affected his actions during the incident. Before the trial, however, the trial court ruled that it would not permit "the use of expert testimony to explain the defendant's subjective fear that he was in danger at the time that this incident occurred." RP (Oct. 3, 2011) at 95. The psychologist did not testify at trial. And when the defense did not call Chipman to the stand, the trial court ruled that, absent his testimony, it was not going to instruct the jury on self defense.

The jury found Chipman guilty of all counts. The jury also found by special verdict that "Kitchings'[s] injuries substantially exceed[ed] the level of bodily harm necessary to constitute substantial bodily harm." RP (Oct. 17, 2011) at 660. The trial court relied on this additional

3

finding in imposing an exceptional sentence of 40 months for the vehicular assault of Kitchings. Chipman timely appeals his convictions and exceptional sentence.

ANALYSIS

I.   SUFFICIENCY OF INFORMATION

Chipman argues for the first time on appeal that "[t]he Information was deficient because it failed to properly allege a causal relationship between Mr. Chipman's subpar driving and the harm inflicted on Cooper and Kitchings." Appellant's Br. at 10. We disagree because (1) the causal connection between the driving and the harm is clear from the information's language and (2) the information gave Chipman sufficient notice of the charges against him.

Under both the federal and state constitutions, a person accused of a crime has the right to notice of the nature and cause of the accusation. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To give proper notice to the accused person, all essential elements of a crime—including non-statutory elements—must be included in the charging document. *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)).

Although Chipman raises this argument for the first time on appeal, a challenge to an information's sufficiency involves a constitutional right to notice, the first RAP 2.5(a)(3) preservation exception. *See State v. Leach*, 113 Wn.2d 679, 691, 782 P.2d 552 (1989). When a defendant first challenges an information's sufficiency on appeal, we liberally construe the document in favor of its validity. *Kjorsvik*, 117 Wn.2d at 105. Our standard of review comprises an essential-elements prong and an actual-prejudice prong. *Kjorsvik*, 117 Wn.2d at 105. Under the essential-elements prong, we look to the information itself for some language that gives the defendant notice of the allegedly missing element of the charged offense.

4

*Kjorsvik*, 117 Wn.2d at 106. If that language is vague or inartful, then we determine under the actual-prejudice prong whether such language prevented the defendant from receiving actual notice of the charged offense, including the allegedly missing element. *Kjorsvik*, 117 Wn.2d at 106.

In the information charging Chipman with two counts of vehicular assault, the State alleged that Chipman "did operate or drive a vehicle in a reckless manner and/or with disregard for the safety of others; and caused substantial bodily harm to [Cooper and Kitchings]." CP at 11. This language tracks the language of RCW 46.61.522(1), which states:

> A person is guilty of vehicular assault if he or she operates or drives any vehicle:
> (a) In a reckless manner and causes substantial bodily harm to another; or. . .
> (c) With disregard for the safety of others and causes substantial bodily harm to another.

Chipman posits that an additional, non-statutory element of vehicular assault is that the defendant's reckless driving proximately caused the substantial bodily harm. We agree. *See State v. Sanchez*, 62 Wn. App. 329, 331, 814 P.2d 675 (1991) (holding that this element of proximate cause is an essential element of vehicular homicide and therefore must be included in the charging document); *State v. Roggenkamp*, 115 Wn. App. 927, 935, 64 P.3d 92 (2003) (noting that case law construing the alternative means of committing vehicular homicide is equally applicable to vehicular assault because the alternative means of committing either crime are the same).

The information charges Chipman with *vehicular* assault and states that Chipman "caused" the injuries. The "missing" proximate-cause element is not missing at all and is readily apparent from any reasonable, common sense construction of the charging document.

II. REFUSAL TO INSTRUCT JURY ON SELF DEFENSE

Chipman argues that the trial court infringed his constitutional right to a fair trial by refusing to instruct the jury on self defense. Because the evidence admitted did not support a self-defense instruction, Chipman has no constitutional claim; accordingly, the trial court did not violate Chipman's due process right to a fair trial.

Sufficient jury instructions allow the parties to argue their theories of the case and properly inform the jury of the applicable law. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (quoting *State v. Bowerman*, 115 Wn.2d 794, 809, 802 P.2d 116 (1990)). Each party may have the jury instructed on its theory of the case as long as evidence exists to support that theory. *State v. Williams*, 132 Wn.2d 248, 259, 937 P.2d 1052 (1997). Failure to instruct on a defense theory that the evidence supports constitutes reversible error. *Williams*, 132 Wn.2d at 260.

A trial court provides self-defense instructions to the jury after the defendant produces some evidence tending to prove that, given the circumstances, the defendant's actions amounted to self defense. *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998). A trial court may refuse to give a self-defense instruction only where no credible evidence supports the claim. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). When deciding this issue, the trial court reviews the entire record in the light most favorable to the defendant. *State v. Callahan*, 87 Wn. App. 925, 933, 943 P.2d 676 (1997).

RCW 9A.16.020 sets the general rule for the lawful use of force in self defense:

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
>
> . . . .
>
> (3) Whenever used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary.

"'To establish self-defense, a defendant must produce evidence showing that he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable.'" *State v. Graves*, 97 Wn. App. 55, 62, 982 P.2d 627 (1999) (quoting *State v. Dyson*, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997)). "Evidence of self-defense is viewed 'from the standpoint of a reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.'" *Graves*, 97 Wn. App. at 62 (quoting *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)).

Viewed in its best light for the defense, the evidence regarding any threat of injury that Chipman may have felt he was facing was this: Kitchings and Cooper confronted him verbally, putting themselves between him and the open car door. They asked Chipman to turn his car off, but he did not. An unidentified person said, "Call the police." RP (Oct. 10, 2011) at 87.

The evidence suggesting Chipman reacted to the confrontation because he believed Kitchings and Cooper were about to injure him was also not extensive. After a state trooper suggested to Chipman that he may have driven out of the parking lot like he did because he was scared, Chipman echoed the suggestion, responding that "[t]hose guys [Kitchings and Cooper] scared me. They were up in my face." RP (Oct. 13, 2011) at 491. And answering a detective's question why Chipman had not called law enforcement or aid, Chipman told the detective that he was "weirded out," a term that Chipman was unable to explain to the detective's satisfaction. RP (Oct. 12, 2011) at 367.

Viewed in a light most favorable to Chipman, this evidence does not even remotely suggest that Chipman feared imminent injury from Kitchings and Cooper or that any such fear

would have been objectively reasonable. A confrontation that is entirely verbal and contains no actual or implied threats of harm does not support a self-defense instruction.[3]

Chipman alleges that the trial court applied the wrong legal standard by not allowing him to raise self defense unless he testified. This allegation misconstrues the court's reasoning. The trial court did not require Chipman to testify in order to give the self-defense instruction; rather, as we address above, the trial court could not find that there was enough evidence to entitle Chipman to the instruction unless Chipman offered that evidence in his own testimony.

Chipman correctly argues that the absence of self defense was another element the State was required to prove. *See* Appellant's Br. at 14 (citing *State v. Woods*, 138 Wn. App. 191, 198, 156 P.3d 309 (2007)). But because self defense was not sufficiently raised here, there was no lack-of-self-defense element for the State to prove and no due process violation.

## III. GENERALIZED ANXIETY DISORDER

Expert testimony regarding Chipman's generalized anxiety disorder is relevant only with respect to Chipman's self-defense theory. Because the trial court properly refused to instruct the jury on self defense, we need not address whether the trial court erred by excluding this expert testimony. As we have said, to assert self defense, Chipman needed to establish not only that he subjectively feared harm, but also that that his fear was objectively reasonable. He did not establish the latter.

---

[3] Because we conclude that Chipman's belief that Kitchings and Cooper were about to injure him was objectively unreasonable even when viewed from Chipman's perspective, we do not need to address whether Chipman's actions were also unreasonable.

42838-5-II

IV.  EXCEPTIONAL SENTENCE

Chipman argues that the trial court erred by imposing an exceptional sentence based on the degree of injury Kitchings suffered because the legislature already factored in such life-threatening injuries in setting the standard sentencing range for vehicular assault. The State counters that, in making his argument, Chipman wrongly relies on cases turning on statutes that the legislature has since amended. We agree with the State.

In *State v. Pappas*, our Supreme Court held that an injury substantially exceeding the level of bodily harm necessary to satisfy the elements of vehicular assault can be an aggravating factor justifying an exceptional sentence. 176 Wn.2d 188, 197, 289 P.3d 634 (2012). Here, substantial evidence supported the jury's finding that Kitchings's injuries substantially exceeded the level required for vehicular assault, and the trial court based the exceptional sentence on this finding. We see no error.

Under RCW 46.61.522, an element of vehicular assault is that the victim suffer "substantial bodily harm," which has the same meaning as in RCW 9A.04.110. Three levels of injury are defined in RCW 9A.04.110(4):

> (a) "Bodily injury," "physical injury," or "bodily harm" means physical pain or injury, illness, or an impairment of physical condition;
> (b) "Substantial bodily harm" means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part;
> (c) "Great bodily harm" means bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ.

9

Referring to these categories of injuries, the court in *Pappas* concluded:

> A trial court can impose an exceptional sentence under RCW 9.94A.535(3)(y) when the jury finds that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense," and the court is satisfied that this is a "'substantial and compelling reason'" to justify an exceptional sentence.

176 Wn.2d at 192 (quoting *State v. Stubbs*, 170 Wn.2d 117, 124, 240 P.3d 143 (2010) (quoting RCW 9.94A.535)). Here, the jury by special verdict found that "Kitchings'[s] injuries substantially exceed the level of bodily harm necessary to constitute substantial bodily harm." RP (Oct. 17, 2011) at 660. This finding was amply supported by the testimony of Dr. Yoshihiro Yamamoto, who had attended to Kitchings's injuries; at trial, Yamamoto remarked that patients with injuries like those Kitchings suffered generally have poor outcomes—for every three patients, one dies; one ends up in a vegetative state; and one survives, but with disabilities. The defense did not contest any aspect of Yamamoto's testimony.

Citing the aggravating factor the jury found, the trial court imposed an exceptional sentence of 40 months for the vehicular assault of Kitchings. The court arrived at this sentence by doubling the standard range of 20 months for vehicular assault, acknowledging not only that Kitchings and his family would suffer physical and financial consequences for a long time, but also that Chipman's sentence should not be longer than the sentence for vehicular homicide that Chipman would have received if Kitchings had died as a result of the incident. We perceive no error in the exceptional sentence.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Hunt, P.J.

_____
Bjorgen, J.