FILED
COURT OF APPEALS
DIVISION II

2015 JAN 27 AM 8: 49

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44331-7-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ALAN J. OLSON, | |
| Appellant. | |

BJORGEN, A.C.J. — The State charged Alan J. Olson with second degree assault by strangulation of Cathy Everett, the mother of Olson's child. A jury convicted Olson of fourth degree assault as a lesser degree offense. Olson appeals, arguing that (1) the prosecutor deprived him of a fair trial by (a) improperly cross-examining him concerning trial strategy and privileged communications with defense counsel and (b) arguing in closing that the State did not need to disprove Olson's claim of self-defense; (2) the investigating officer gave improper opinion testimony on Olson's guilt and the credibility of a defense witness; (3) the trial court erred by failing to investigate possible juror misconduct when the jury asked to have a 911 recording

replayed prior to deliberations; (4) the trial court erred by replaying the 911 recording without considering the risk of unfair prejudice; (5) his attorney's failure to object to these errors, improper evidence, and misconduct denied him the effective assistance of counsel; and (6) the sentencing court erred in imposing on Olson various costs and fees applicable to a felony assault conviction because the jury only convicted him of the lesser degree misdemeanor. Concluding that Olson received ineffective assistance of counsel, we reverse and remand.

## FACTS

Everett called 911 from a neighbor's home after she and Olson had an altercation at their apartment. Kelso police officer David Shelton responded and arrested Olson later the same evening. The State initially charged Olson with two counts of second degree assault by strangulation based on the incident, but moved to dismiss one count on the first day of trial.

Shelton testified at trial that Everett was "visibly traumatized" and that she had "a pretty severe bump on her forehead[,] . . . an abrasion on the side of her neck, [and] an abrasion on her face." Verbatim Report of Proceedings (VRP) at 110, 112. Shelton testified also that Olson, whose right arm was in a cast, claimed that Everett had attacked him and that he did not call the police because "the last time he did that, he got arrested." VRP at 380.

Everett testified on Olson's behalf at trial stating that she initiated the physical altercation by shoving Olson and that he only put his hands on her "to prevent [Everett] from hitting him." VRP at 248. Everett denied that Olson had hit, kicked, or choked her during the incident. Everett explained that she falsely accused Olson of assaulting her because he had left with their child and she "was willing to do anything or say anything to make him look like the bad person" so that she could get custody of the child. VRP at 249-50. Olson testified to the altercation similarly in most respects.

2

The court instructed the jury on fourth degree assault as a lesser degree offense. The court also gave the standard jury instruction on self-defense, informing the jury that

> [t]he State has the burden of proving beyond a reasonable doubt that the force used by the Defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

VRP at 415-16; *see* 11 WASHINGTON PRACTICE: PATTERN JURY INSTRUCTIONS CRIMINAL § 17.02 (3d ed.) (2008).

During closing argument, the prosecutor asserted that, if the jury found that Olson had actually strangled Everett, it need not consider self-defense at all because he denied strangling her:

> Number 1, go back, ask yourself did he strangle her? If twelve of you agree beyond a reasonable doubt, . . . you're convinced and you never have to get to self-defense because never did he indicate he strangled her. If the State has proven that he did strangle her, stop. Write in guilty and be done. . . . [M]erely saying self–defense doesn't make it so, okay? It is the State's burden to prove that force is not lawful. Well, we have raised that burden because self-defense is everybody's right, okay? But merely going ["]self-defense, self-defense["] doesn't make it so. Is what he says reasonable? The Defendant is not required to put on any evidence, and you couldn't use it against him if he didn't.

VRP at 437-38. After pointing to alleged deficiencies in the evidence supporting Olson's self-defense claim and inviting the jury to infer guilt from Olson's late disclosure of and failure to present certain evidence, the prosecutor reiterated this point:

> The State has a duty to show that that force wasn't lawful. But if you don't believe the Defendant's version, State doesn't have to disprove it, okay? . . . If you don't believe what he says about self-defense, does the State have to . . . disprove something you don't believe? No.

VRP at 442. The prosecutor summed up her self-defense argument by stating: "So, as I said,

3

Question Number 1, do you believe there's strangulation? If the answer is yes, write guilty . . .[a]nd you're done." VRP at 443-44.

Olson did not object to these arguments. In his closing remarks, however, defense counsel argued to the jury that the prosecutor's argument undermined the presumption of innocence:

> The State wants to mention the lack of presentation from the Defense, the lack of preparedness to some degree. Well, that's shifting the burden. The burden isn't on the Defense. We're not obligated to put on a single witness. We're not obligated to cross-examine a single person. We're not obligated to do a closing statement or even participate in jury selection. The burden is on the State.

VRP at 447.

In rebuttal, the prosecutor again emphasized that the jury only need consider the issue of self-defense if it believed Olson's testimony:

> The State does have a burden of proving a case beyond a reasonable doubt. . . . And the State is required to prove that an assault is not done with unlawful force. And the State put on that evidence. And then the Defense put on their evidence, and only if you believe their evidence, do you have a question that the State has to disprove lawful force[.] Because the State's evidence is there was no lawful force used. . . . So the question you have to ask yourself is do you believe the Defendant?

VRP at 464-65. The prosecutor returned to this theme again at the end of her remarks.

The jury found Olson guilty of fourth degree assault. The court imposed a sentence of 364 days' confinement, with 350 days suspended, and two years of community supervision, along with $2,281.69 in legal financial obligations. Olson appeals.

## ANALYSIS

Olson bases his ineffective assistance of counsel claim on his attorney's failure to object to certain evidence and portions of the State's closing argument. Therefore, we first consider Olson's claims of prosecutorial misconduct and then turn to his ineffective assistance claim. We

4

conclude that the prosecutor misstated the law concerning self-defense in her closing argument. However, because a curative instruction could have remedied the harm, the misconduct does not warrant reversal. We conclude also that defense counsel's failure to object to this misconduct constituted ineffective assistance of counsel, warranting reversal and remand for a new trial.

## I. PROSECUTORIAL MISCONDUCT

Olson contends that the prosecutor committed misconduct that deprived him of a fair trial and that this misconduct merits reversal despite defense counsel's failure to timely object. Specifically, Olson argues that the prosecutor undermined the presumption of innocence in two ways: during her cross-examination of Olson by questioning him and making comments about his failure to present certain evidence and in closing argument by contending that the State did not need to disprove Olson's self-defense theory if the jury did not believe Olson's version of events.[1] We conclude that this aspect of closing argument constituted misconduct and do not reach the other instances of claimed misconduct.

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was both improper and prejudicial "in the context of the record and all of the circumstances of the trial." *In re Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). To establish prejudice, the defendant must "show a substantial likelihood that the misconduct affected the jury verdict." *Glasmann*, 175 Wn.2d at 704. A defendant who failed to object at trial will be deemed to have waived a prosecutorial misconduct claim unless the defendant

---

[1] Olson also argues that the prosecutor improperly sought to undermine his credibility and infringed on his right to counsel by cross-examining him concerning privileged communications with defense counsel, Olson's decision to testify, and other matters of trial strategy. Because we reverse on other grounds, we do not reach these claims.

establishes "that the misconduct was so flagrant and ill[-]intentioned that an instruction would not have cured the prejudice." *Glasmann*, 175 Wn.2d at 704.

A.    The State Misstated the Law by Arguing That the Jury Need Only Consider Self-Defense If It Believed Olson

The State contends that applicable law is consistent with the prosecutor's argument that the jury did not have to consider the issue of self-defense if it did not believe Olson's testimony, pointing out that "a defendant is only entitled to a self-defense instruction [if he or she] offer[s] credible evidence tending to prove self-defense." Br. of Resp't at 17 (citing *State v. Dyson*, 90 Wn. App. 433, 438, 952 P.2d 1097 (1997)). We disagree.

"As a quasi-judicial officer representing the people of the State, a prosecutor has a duty to act impartially in the interest only of justice." *State v. Warren*, 165 Wn.2d 17, 27, 195 P.3d 940 (2008). A prosecutor commits misconduct by misstating the law. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996). Such misconduct poses a serious risk of prejudice because a "'prosecutor's argument is likely to have significant persuasive force with the jury'" due in part to "'the prestige associated with the prosecutor's office.'" *Glasmann*, 175 Wn.2d at 706 (quoting AM. BAR ASS'N STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION & DEFENSE FUNCTION, std. 3-5.8, cmt. at 107 (3d ed. 1993)); *accord Warren*, 165 Wn.2d at 27 (holding a prosecutor's misstatement of the burden of proof "particularly grievous" because "[t]he jury knows that the prosecutor is an officer of the State"). Thus, "[t]he prosecuting attorney misstating the law of the case to the jury is a serious irregularity having the grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

The State's contention that its argument correctly states the law of self-defense misses its mark because it bears only on whether the court properly gave a self-defense instruction in the

first place, an issue the parties here do not dispute. In holding that an argument by the State in another case amounted to prosecutorial misconduct, we explained that

> the prosecutor's misleading comments suggested that the codefendants must first prove self-defense to the *jury*, and that the State could not disprove the affirmative defense. This is not the law in Washington.
> Whether the defense has presented evidence of self-defense is a question for the trial court to address when deciding whether to instruct the jury on the law of self-defense. [*State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).] Once the trial court has found evidence sufficient to require a self-defense instruction, that inquiry, even if erroneous, has ended. Thus, the prosecutor's argument improperly sought to shift the burden of proof to the defense.

*State v. McCreven*, 170 Wn. App. 444, 471, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013).

The Supreme Court fixed the landscape even more clearly in *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997), holding that "[t]o be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense," but specifying also that "*once the defendant produces some evidence, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt.*" (Emphasis added.) Under *McCreven* and consistently with *Walden*, the prosecutor's argument that the jury need not consider the claim of self-defense if it disbelieved Olson's testimony misstated the law and improperly undermined the presumption of innocence. *Walden*, 131 Wn.2d at 473; *McCreven*, 170 Wn. App. at 471.

More importantly, since any compression of the neck intended to obstruct or actually obstructing respiration or blood flow qualifies as strangulation, *see* RCW 9A.04.110(26), the jury could quite properly have refused to believe Olson's testimony that he did not strangle Everett but still have found that he acted in self-defense. *See Dyson*, 90 Wn. App. at 439-40. Thus, the prosecutor's admonishment to "stop[, w]rite in guilty and be done" if the jury found that "the

State has proven that he did strangle her," invited the jury to decide the case on an improper basis and misstated the law. VRP at 437.

The *Glasmann* court, furthermore, held that "it was clearly misconduct for the prosecutor to inform the jury that acquittal was appropriate only if the jury believed Glasmann, and [this] shows the prosecutor's failure to prosecute this case as an impartial officer of the court." 175 Wn.2d at 714. We see no meaningful distinction between the argument held improper in *Glasmann* and the prosecutor's self-defense argument here.

Because we hold below that the failure to object to this misconduct warrants reversal and remand, we do not discuss the other claimed instances of prosecutorial misconduct. Before reaching the issue of ineffective assistance, though, we examine whether this prosecutorial misconduct itself warrants reversal.

B.    A Curative Instruction Could Have Remedied the Harm from the Prosecutor's Misconduct.

Olson contends that the prosecutor's various acts of misconduct require reversal because they likely affected the verdict. As noted, a defendant who failed to object to misconduct at trial will be deemed to have waived the claim absent a showing "that the misconduct was so flagrant and ill[-]intentioned that an instruction would not have cured the prejudice." *Glasmann*, 175 Wn.2d at 704.

We have repeatedly held that a prosecutor commits flagrant and ill-intentioned misconduct by making burden-shifting arguments in closing. *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010); *State v. Venegas*, 155 Wn. App. 507, 525, 228 P.3d 813 (2010). Although we do not characterize the misstatement of the law here as burden shifting, it shares the same potential for misleading the jury about the location of the burden of proof.

In addition, the *Fleming* court held that a prosecutor's arguments constituted flagrant and ill-intentioned misconduct in part because binding precedent, published prior to Fleming's trial, clearly established the impropriety of such arguments. *Fleming*, 83 Wn. App. at 214. Olson's trial occurred in December 2012, two months after our court's publication of *McCreven*, which held similar arguments[2] improper. 170 Wn. App. at 470.

Even if deemed flagrant and ill-intentioned, though, the prosecutor's misstatement of the law was curable by an instruction. In *State v. Emery*, 174 Wn.2d 741, 759, 761, 278 P.3d 653 (2012), the prosecutor committed misconduct through a "fill in the blank" argument which the court held could potentially have confused the jury about its role and the burden of proof. Nonetheless, the Supreme Court held that the misconduct did not require reversal because

> the misstatements here could have been cured by a proper instruction. If either [defendant] had objected at trial, the court could have properly explained the jury's role and reiterated that the State bears the burden of proof and the defendant bears no burden.

*Emery*, 174 Wn.2d at 764; *accord Warren*, 165 Wn.2d at 27-28 (holding that a prosecutor's misstatement of the law, undermining the presumption of innocence, was remedied by the trial court's "correct and thorough curative instruction").

This reasoning applies equally here. A proper curative instruction could have remedied the harm from the prosecutor's arguments about self-defense. Thus, under *Emery*, 174 Wn.2d at 764 and *Glasmann*, 175 Wn.2d at 704, this misconduct does not merit reversal.

---

[2] The arguments held improper in *McCreven* were as follows:
> "How do I disprove that the Defendant reasonably believed that there was imminent danger, when there has been no evidence that the Defendant reasonably believed that there was imminent danger? Ladies and gentleman, there is nothing to disprove that because there is no evidence of it. . . . So if there is no evidence of self-defense, how is it that they even get to argue it?"

170 Wn. App. at 470 (quoting trial transcript).

9

## II. Ineffective Assistance of Counsel

Olson contends that his counsel's failure to timely object to the misconduct discussed above denied him the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution. We agree.

We review claims of ineffective assistance of counsel de novo, as they present mixed questions of law and fact. *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 205, 80 L. Ed. 2d 674 (1984). A defendant who raises an ineffective assistance claim "bears the burden of showing that (1) his counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him." *A.N.J.*, 168 Wn.2d at 109.

With respect to the deficient performance prong, "[t]here is a strong presumption that defense counsel's conduct is not deficient," but the defendant rebuts that presumption if "no conceivable legitimate tactic explain[s] counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To meet the prejudice prong, a defendant must show a reasonable probability "based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation." *McFarland*, 127 Wn.2d at 337; *Strickland*, 466 U.S. at 694.

We can see no legitimate trial strategy in defense counsel's decision not to object to the prosecutor's improper closing argument concerning self-defense. As discussed, the rulings in *McCreven* and *Fleming* had already signaled that such arguments were improper. *Walden*, 131 Wn.2d at 473; *McCreven*, 170 Wn. App. at 471. Instead of a timely objection and a thorough

curative instruction from the court clearly stating that the jurors had to consider self defense regardless of whether they believed Olson's testimony, the jury heard an apparently self-serving explanation of the law from defense counsel, an explanation disputed by the prosecutor in rebuttal. No conceivable legitimate tactic explains this choice: even if counsel did not wish to interrupt the State's closing argument, he could have moved for a mistrial and requested a curative instruction outside the presence of the jury.

The remaining question is whether defense counsel's deficient performance prejudiced Olson. Olson's self-defense claim presented his only realistic chance of acquittal. Evidence was before the jury from which it could have inferred that Olson acted in self-defense. Had his attorney timely acted on the knowledge that the prosecutor was repeatedly misstating the law so as to undermine the State's burden on that defense, Olson could have obtained a curative instruction that would have bolstered his self-defense claim. With such an instruction, Olson would likely have prevented the State from undermining its burden of proof on his only real defense.

Olson has established both deficient representation and prejudice. Accordingly, we reverse his conviction and remand for a new trial.[3] *State v. Thomas*, 109 Wn.2d 222, 232, 743 P.2d 816 (1987).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW

---

[3] Because we reverse Olson's conviction on this ground, we do not reach his other claimed errors.

11

No. 44331-7-II

2.06.040, it is so ordered.

_____
BJORGEN, A.C.J.

We concur:

_____
MAXA, J.

_____
LEE, J.

12