IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                     Respondent,<br><br>v.<br><br>JON GARY NEREIM,<br><br>                     Appellant. | No. 78774-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 21, 2020 |

SMITH, J. — Jon Nereim appeals his jury conviction for third degree assault. He contends that defense counsel's failure to propose a self-defense instruction for that charge deprived him of his constitutional right to effective assistance of counsel. The State concedes that defense counsel's performance in this regard was deficient. Because we conclude that Nereim was prejudiced by this deficient performance, we reverse.

## FACTS

On October 7, 2017, Nisreen Judeh and her 14-year-old son Hamza drove to a 7-11 convenience store located a few blocks from their house in Seattle.[1] Nisreen is a practicing Muslim and wears a head scarf as part of her religious observances. Hamza waited in the car while his mother went inside.

---

[1] Because several members of the Judeh family were involved in the incident, we refer to them by their first name for the sake of clarity. No disrespect is intended.

At the 7-11, Nisreen encountered her friend Daryll Bennett and they started talking. Bennett is African-American and uses a wheelchair. Around that time, Nereim entered the 7-11 to purchase food before catching a bus to the shelter where he was staying. Bennett testified that Nereim looked at them and said he "don't like blacks and don't like Muslims." Bennett and Nisreen tried to ignore Nereim, but he kept repeating himself. They decided to leave the store and continue their discussion outside. Nisreen testified that as Nereim exited the store and walked past them, she heard him use "the N word" and say, "Terrorist Muslim, you should go back to where you came from." Nisreen attempted to end the confrontation by waving at Nereim and saying, "Have a good day." Nereim continued to swear at them, then walked to a bus stop across the street. Nisreen and Hamza got into their car and started to drive away.

As Nisreen and Hamza drove past the bus stop, Nereim began shouting and making insulting gestures toward them, including raising his middle finger and showing the sole of his foot.[2] Nisreen made a U-turn and pulled up to the bus stop. She testified that she "just wanted to talk to him, see what's going on, why is he doing this, maybe I can talk to him peacefully." Hamza called his older brother Tariq to tell him that "someone was getting aggressive with my mom."

While Nisreen was still in the car, Nereim continued cursing and calling her "the N word." Nisreen whistled to Bennett and asked him to come over. Bennett, accompanied by his friend Abdoulie Corr, went to help Nisreen. Corr is

---

[2] Nisreen and her husband, Ibraheem, testified that Muslims consider this gesture extremely insulting.

disabled and, like Bennett, uses a wheelchair. Corr did not know Nereim or the Judeh family prior to this incident. He advised Nereim to "just let it go."

Nisreen exited the car and asked Nereim "[w]hy are you doing this? Do you know me?" Nereim appeared "very upset" and continued to curse. Hamza heard Nereim say "terrorist and dirty Muslim, go back home" to Nisreen. Around this time, Nisreen's older son Tariq arrived and stood in front of Nisreen to protect her. Nereim began walking away from the bus stop. Tariq testified that he "didn't want him to get away with what he did" so he approached Nereim to ask what had happened. Nereim told Tariq that Nisreen had "called [him] names." Tariq then asked Nisreen what happened, and she said Nereim had yelled racial slurs at her.

Nereim then drew a can of pepper spray from his pocket, took a few steps forward, and discharged the canister twice. The pepper spray struck Nisreen, Tariq, and Corr, causing intense pain. Nereim tried to board a Metro bus, but Tariq told the driver that Nereim had attacked them. The bus departed without letting him on.

Around that time, Ibraheem and son Bilal arrived at the scene. Ibraheem testified that he asked Nereim what happened, and Nereim responded, "those Muslims and that N word attacked [me]." When Ibraheem informed Nereim that Nisreen is his wife, he saw Nereim raise his right arm as if preparing to pepper spray him. Ibraheem tackled Nereim to the ground, and Tariq took the pepper spray out of his hand. Police officers arrived, detained Nereim, and recovered a concealed firearm from his person.

Nereim testified to a different version of events. He stated that he was purchasing food at the 7-11 when Nisreen, without provocation, called him a "coward" and said, "I hope that you die." Nereim said he left the store without responding in any way. As Nereim sat at the bus stop eating his food, he saw Nisreen in her car getting ready to leave. He felt insulted by her comments in the store, so he decided to insult her back by shouting profanities and showing the sole of his foot. According to Nereim, Nisreen pulled up in her car and called him "a piece of shit," a "coward," and "white trash." She then got out of the car and stepped within a few inches of Nereim while angrily repeating, "You don't know me." Nereim stepped back and asked Nisreen to "just go away," but Nisreen clenched her fists and lunged at him. Tariq showed up and accused Nereim of hitting Nisreen. Then Tariq got "into . . . a fighting stance" and reached inside his pants as he and Nisreen advanced toward him. Nereim, believing he was under attack, discharged two bursts of pepper spray at Nisreen and Tariq "to stop their aggression towards me." Nereim acknowledged that Corr was struck by "overspray" but claimed this was unintentional.

The State charged Nereim by amended information with one count of malicious harassment of Nisreen, one count of malicious harassment of Tariq, and one count of assault in the third degree of Corr under the "criminal negligence" prong of the statute. While discussing jury instructions, the trial court stated that "self-defense only pertains to the malicious harassment, not the assault, because it was essentially unintended collateral consequences, although that's why it's charged as assault three and not assault two." Defense counsel

4

appeared to agree, stating that "I think in my jury instructions I did put—it's—in defense of malicious harassment." The court's instructions to the jury specified that Nereim's self-defense claim applied to the malicious harassment charges, but the instructions pertaining to the third degree assault charge did not reference self-defense.

During deliberations, the jury submitted two inquiries to the trial court. The first asked:

> Regarding count 1[,] ([Instruction] No. 17), element 3, does the act of discharging the pepper spray have to be motivated by the defendant's perception of the other person's race, religion, or national origin, in order to fulfill this element, or is the element fulfilled by acts that were racially, religious, or origin-related at any time during the entire incident[?][3]

The court responded, "Please re-read Instruction No. 6," which defines malicious harassment. The second jury inquiry stated:

> We are deadlocked on count one and two. We have a unanimous decision on count three. How should we proceed?

The court instructed the jury to keep deliberating. After the jury resubmitted the second inquiry, the court declared a mistrial as to the two malicious harassment counts and accepted the jury's verdict of guilty on the third degree assault count. The court imposed a standard range sentence of three months of confinement. Nereim appeals.

---

[3] Element 3 of instruction 17 provides "[t]hat the defendant acted because of his perception of the race religion national origin of Nisreen Judeh."

ANALYSIS

Ineffective Assistance of Counsel

Nereim argues that his trial counsel provided ineffective assistance by failing to request that the self-defense instruction apply to all three charges. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on a claim of ineffective assistance, a defendant must establish that (1) his attorney's performance was deficient and (2) the deficiency prejudiced him. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

The State concedes that Nereim's trial counsel was deficient for failing to propose a self-defense instruction for the third degree assault charge. We accept the State's concession.

To establish that counsel's performance was deficient, Nereim must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." In re Pers. Restraint of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863.

"Where self-defense negates an essential element of a crime, the State must prove the absence of self-defense beyond a reasonable doubt, if the evidence supports the giving of such an instruction." State v. Dyson, 90 Wn. App. 433, 437, 952 P.2d 1097 (1997) (footnote omitted).

Nereim was charged with malicious harassment of Nisreen and Tariq pursuant to former RCW 9A.36.08 (2010):

> (1) A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:
>> (a) Causes physical injury to the victim or another person;
>> (b) Causes physical damage to or destruction of the property of the victim or another person; or
>> (c) Threatens a specific person or group of persons and places that person . . . in reasonable fear of harm to person or property.

Nereim was also charged with third degree assault of Corr pursuant to RCW 9A.36.031:

> (1) A person is guilty of assault in the third degree if he or she . . .
>> . . . .
>> (d) [w]ith criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

A person is criminally negligent "when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d). The use of force is lawful when used in self-defense. RCW 9A.16.020(3).

7

Here, it appears that the trial court and defense counsel were under the impression that a self-defense instruction was not available for the third degree assault charge because it was charged under the negligence prong of the statute. This was incorrect. "[A] self-defense instruction is necessary, when supported by the evidence, in a third degree assault case." Dyson, 90 Wn. App. at 438. In so holding, the Dyson court reasoned that "[e]xplicit evidence that a defendant intended to assault a victim is not necessary . . . . What is necessary is evidence that the action that caused the victim's injury was not accidental, but rather made in order to protect the defendant." Dyson, 90 Wn. App. at 434.

Such evidence is present in this case. Nereim did not deny pepper spraying Nisreen and Tariq but claimed he did so in self-defense. He also acknowledged that some of the spray hit Corr but asserted that this was unintentional. Under these circumstances, there was no legitimate strategic or tactical reason for defense counsel to request a self-defense instruction for the malicious harassment charges but not the assault charge. We accept the State's concession that counsel's performance was deficient.

The next issue is whether Nereim was prejudiced by his counsel's deficient performance. A defendant shows prejudice where "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The likelihood of a

different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Here, the evidence established that Nereim had no lawful basis to defend himself directly against Corr, who was unarmed, in a wheelchair, and exhibited no threatening behavior. And Nereim testified that he did not intend to pepper spray Corr. Thus, Nereim's ability to assert self-defense against the assault of Corr flowed entirely from his ability to assert self-defense against the malicious harassment of Nisreen and Tariq.

The jury hung on the two malicious harassment charges for which a self-defense instruction was given, but convicted Nereim on the third degree assault charge for which that instruction was not given. The jury's first written inquiry suggests that at least one juror was not convinced that Nereim pepper sprayed Nisreen and Tariq based on his perception of their race, religion, or national origin. Given Nereim's testimony that he intentionally sprayed Nisreen and Tariq to stop a perceived attack, a reasonable juror could logically conclude that the act did not constitute malicious harassment because it was done in lawful self-defense. On this record, we conclude there is a reasonable probability that at least one juror would have refused to convict Nereim of third degree assault if they had been instructed that self-defense could also be considered for that charge.

The State argues that the instructions were sufficient because they allowed Nereim to argue that the unintentional spraying of Corr was not wrongful and therefore not criminally negligent. But "[a] defendant in a criminal case is

9

entitled to have the jury fully instructed on the defense theory of the case." State v. Staley, 123 Wn.2d 794, 803, 872 P.2d 502 (1994). Reading the instructions as a whole, a reasonable juror could conclude that the absence of a self-defense instruction for the third degree assault charge meant that Nereim's act of pepper spraying Nisreen and Tariq in self-defense was nevertheless unlawful in the context of that charge.

The State further argues that the jury could not have convicted Nereim of assault if the State had not disproven self-defense against Nisreen and Tariq. The State asserts that this leaves only two possible scenarios: either the jury accepted Corr's suggestion that Nereim intentionally pepper sprayed him, or the jury believed Nereim acted wrongfully by pepper spraying Nisreen and Tariq but was not convinced the act was based on his perception that they were Muslims. But we agree with Nereim that it is not possible to establish precisely how the jurors reached consensus on the third degree assault charge and not the malicious harassment charges. The absence of a self-defense instruction for the third degree assault charge undermines our confidence in the result and creates a substantial likelihood that the result would have been different. Nereim has established prejudice.

Reversed.

WE CONCUR:

10